UNITED STATES, Appellee,

v.

Timothy J. RUSHATZ, First Lieutenant
U.S. Army, Appellant.

No. 64,410.
CM 8800534.

U.S. Court of Military Appeals.

Argued Sept. 12, 1990.
Decided Sept. 28, 1990.

For appellant: *Mark L. Waple, Esq., A. Camden Lewis, Esq., Costa M. Pleicones, Esq.* (argued); *Captain W. Renn Gade* (on brief).

For appellee: *Captain Randy V. Cargill* (argued); *Colonel Alfred F. Arguilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

SENTELLE,[1] Circuit Judge:

A general court-martial composed of members convicted First Lieutenant Timothy J. Rushatz of larceny of $1,500.00 from the United States and of three specifications of conduct unbecoming an officer by providing false receipts to other officers to submit for *per diem* claims, in violation of Articles 121 and 133, Uniform Code of Military Justice, 10 USC §§ 921 and 933, respectively. Thereupon, the members sentenced Lieutenant Rushatz to dismissal, to-

---

**1.** Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

tal forfeitures, and a fine of $10,000.00. The convening authority eliminated the fine but otherwise approved the sentence. The Court of Military Review affirmed the findings but reduced the forfeitures to forfeiture of two-thirds' pay per month until the dismissal is executed. 30 MJ 525, 540 (1990).

This Court granted review of the following issues:

## I

WHETHER THE MILITARY JUDGE COMMITTED ERROR MATERIALLY PREJUDICIAL TO THE SUBSTANTIAL RIGHTS OF APPELLANT IN DENYING APPELLANT'S MOTION FOR A NEW PRETRIAL INVESTIGATION BASED UPON THE IMPROPER *EX PARTE* INVESTIGATIVE ACTIVITIES OF THE INVESTIGATING OFFICER.

## II

WHETHER THE MILITARY JUDGE COMMITTED ERROR MATERIALLY PREJUDICIAL TO THE SUBSTANTIAL RIGHTS OF APPELLANT IN DENYING APPELLANT'S MOTION FOR A MISTRIAL BASED ON THE GOVERNMENT'S INVASION OF APPELLANT'S ATTORNEY/CLIENT RELATIONSHIP.

## III

WHETHER THE MILITARY JUDGE COMMITTED ERROR MATERIALLY PREJUDICIAL TO THE SUBSTANTIAL RIGHTS OF APPELLANT IN ADMITTING IRRELEVANT AND HIGHLY PREJUDICIAL EVIDENCE OF "OTHER CRIMES, WRONGS OR ACTS" IN VIOLATION OF MILITARY RULE OF EVIDENCE 404(b).

## IV

WHETHER THE FINDINGS AND SENTENCE SHOULD BE SET ASIDE BECAUSE OF MISCONDUCT BY TRIAL COUNSEL IN MAKING DISPARAGING AND DISRUPTIVE GESTURES DURING THE EXAMINATION OF DEFENSE WITNESSES.

On examination of the record we conclude that no error occurred prejudicial to appellant's substantial rights and affirm the decision of the Court of Military Review. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

The Court of Military Review opinion sets forth in some detail the facts related to the granted issues, and we will not rehash them more than necessary to a disposition of the issues. Briefly put, appellant contacted student officers living on-post at Fort Knox, Kentucky, and advised "them that they could live off-post at no cost to themselves by utilizing the *per diem* reimbursement system." 30 MJ at 528.

The charges in this case arose out of appellant's dealings with four of those officers—Lieutenants Panaccione, L'Heureux, Morris, and Doyle. Appellant referred each lieutenant to the Gold City realty company where each signed a short-term lease at about $330.00 per month for an unfurnished apartment or house. Subsequently, appellant arranged furniture rentals for each lieutenant.

Sometime near the completion of each lieutenant's schooling, appellant met with him to "settle" accounts. He prepared a worksheet computing an amount "owed" to appellant as "back rent" and provided receipts showing that each lieutenant had paid rent in an amount equal to the maximum temporary duty (TDY) expense of $30.00 per day times the number of days that lieutenant had occupied the apartment or house. Appellant requested that each officer submit the receipt with his claim for TDY expenses at his next duty station. Finally, appellant asked each lieutenant "to sign a new, back-dated" lease, reflecting the new higher rate; "remit to appellant the amount designated as 'back rent'"; and "sign a promissory note" reflecting this indebtedness. 30 MJ at 529. Whenever questioned by the lieutenants, appellant assured them that the transactions were "legal" or that "he had obtained a legal

opinion from the post staff judge advocate." *Id.* at 530.

The Article 121 charge for theft is based upon five back-dated receipts prepared by appellant and submitted by Lieutenant Doyle for reimbursement. The Article 133 charges for conduct unbecoming an officer are based upon the rental receipts prepared by appellant for Lieutenants Panaccione, L'Heureux, and Morris. *Id.* at 529 n. 3.

## I. THE ATTORNEY–CLIENT PRIVILEGE ISSUE

Of the granted issues, only issue II— whether the military judge erred in failing to grant appellant's motion for mistrial because of the Government's invasion of appellant's attorney-client relationship—requires substantial discussion.

### A. Background

During the prosecution's "case-in-chief, two lieutenants testified that appellant had informed them that his plan had been cleared by military attorneys." 30 MJ at 533. On direct examination, appellant himself testified that he had consulted with a legal assistance officer—Captain Lind—regarding his real estate plan. Appellant testified that the legal assistance officer refused to discuss his business scheme with him but did intimate to appellant that a similar scheme was employed by military officers at another location.

Under cross-examination, appellant stated that, on May 6, 1986, he had met with Captain Mullis, a legal assistance attorney who had later moved to the prosecutor's office. Trial counsel asked if it was true that Captain Mullis did not discuss appellant's real estate business. Appellant replied, "That's what he claims." Trial counsel then asked if appellant had contacted Captain Mullis while trial was on-going to see if Captain Mullis remembered the May 6 visit. Defense counsel objected.

At a session pursuant to Article 39(a), UCMJ, 10 USC § 839(a), trial counsel asserted that he had spoken with Captain Mullis, the attorney with whom appellant allegedly discussed the real estate scheme.

Mullis asserted that he had notes of the visit and that the subject was not discussed. Defense counsel then moved for a mistrial, arguing that Captain Mullis had breached his attorney-client relationship with appellant by disclosing privileged information to the prosecution. The military judge summoned Captain Mullis to testify as a witness for the court. Captain Mullis testified that, when he became aware of appellant's case while working in the prosecutor's office, he notified a prosecutor that appellant had conferred with him while he was a legal assistance officer but that the matter was unrelated to the litigation involving appellant's real-estate ventures. Captain Mullis further testified that, after he was reassigned as a prosecutor in August 1987, he attended a session of appellant's Article 32, UCMJ, 10 USC § 832, investigation in November 1987 as an assistant trial counsel.

Next, Captain Mullis stated that, when appellant contacted him in late December 1987, he assured "appellant that what they had previously discussed remained privileged information, but that ... he could no longer enter into an attorney-client relationship" with appellant on other matters. 30 MJ at 534.

Finally, Captain Mullis reiterated that he had never discussed anything within the attorney-client relationship with any member of the trial team in appellant's case, other than stating that the issue was not related to the investigation.

The military judge denied appellant's motion for mistrial and found as a fact that the discussions did not relate to the charges. The military judge, however, found that the prosecution was insensitive to appellant's attorney-client relationship and "had improperly utilized the negative implication of Captain Mullis' denial" of having any discussion with appellant about his real-estate plans. *Id.* at 534. Consequently, the military judge instructed the court-martial members to disregard anything that was mentioned about appellant's attorney-client relationship with Captain Mullis. *See id.* at 534.

454

## B. Discussion

Appellant argues that Captain Mullis' disclosure of privileged information violates Article 27(a)(2), UCMJ, 10 USC § 827(a)(2), and that he was prejudiced by Captain Mullis' disclosure of privileged information to the prosecution because the prosecution gained the ability to impeach and intimidate him. We do not agree that the insensitivity of trial counsel to appellant's attorney-client relationship substantially prejudiced appellant at trial or that the prosecution gained a benefit requiring reversal of the decision below.

■■■ Obviously, a lawyer must not represent adverse or conflicting interests, or permit himself to be placed in a situation where he may be forced to choose between such interests. *United States v. Green*, 5 USCMA 610, 615, 18 CMR 234, 239 (1955); Art. 27(a)(2). In construing this provision, the Court of Military Review has held that, "where in the same general proceedings an attorney takes a position opposed to his former client, *it is immaterial that he may not divulge confidential communications from that latter person.*" *United States v. McKee*, 2 MJ 981, 983 (ACMR 1976) (quoting from *United States v. Green*, 5 USCMA at 615, 18 CMR at 239 (emphasis added)). This rule is strictly enforced. For instance, a lawyer cannot prosecute his former client in the same or a related matter, even though while acting for that former client he gained no knowledge which could be used to adversely affect the former client in a subsequent proceeding. 2 MJ at 983.

■■■ This Court has established a three-prong test to determine if former counsel is disqualified in a subsequent case. *See United States v. Stubbs*, 23 MJ 188 (CMA), *cert. denied*, 484 U.S. 846, 108 S.Ct. 142, 98 L.Ed.2d 98 (1987). Specifically, the accused must establish: (1) the former representation; (2) a substantial relation between the subject matter of the former representation and the issues in the later action; and (3) the later adverse employment. 23 MJ at 193–94. When the accused has met this initial burden, the

Government must affirmatively demonstrate "that no communication whatsoever has occurred between that lawyer and the prosecution staff regarding any aspect of the accused's case." *Id.* at 194.

■■ Appellant argues that under *McKee*, the military judge erred in failing to disqualify the prosecutors based on the pre-existing attorney-client relationship between appellant and Captain Mullis. Appellant's reliance on *McKee*, however, is misplaced. In *McKee*, the prosecutor questioned and advised the accused prior to trial on the exact offense in issue, and the accused testified that he thought the trial counsel was his attorney. The court held that the prosecutor was disqualified from prosecuting the accused because of the pre-existing attorney-client relationship and because the accused honestly believed that he was being represented by a member of the prosecution in the subsequent litigation. *United States v. McKee, supra.* In this case, Captain Mullis had not "acted for" appellant (Art. 27(b)(2)) regarding his rental scheme, and he did not prosecute appellant. Therefore, appellant failed to meet even the threshold of the *Stubbs* test: that he entered into an attorney-client relationship with Captain Mullis "concerning the same or related matters to those being tried at his court-martial." *See United States v. Stubbs*, 23 MJ at 193–94.

Appellant also argues that his motion for mistrial should have been granted when the prosecution disclosed that Captain Mullis had discussed the existence of his attorney-client relationship with appellant. This disclosure, however, is not *per se* protected by the attorney-client privilege.

■■ As the Court of Military Review correctly stated, an attorney's statement that his relationship with a client does not include a particular topic generally is not a disclosure of protected information. "[I]nformation such as the existence of the attorney-client relationship" is "almost always" deemed "to be outside the protection of the attorney-client" privilege. 30 M.J. at 535, citing *Chirac v. Reinicker*, 24 U.S. (11

Wheat.) 280, 294–95, 6 L.Ed. 474 (1826); *In re Sealed Case*, 877 F.2d 976, 979 (D.C.Cir. 1989). Information regarding existence of an attorney-client relationship is protected only when there is "a strong possibility ... that disclosure of the information would implicate the client in the very matter for which legal advice was sought in the first case." *In re Sealed Case*, 877 F.2d at 979, quoting *In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach)*, 695 F.2d 363, 365 (9th Cir.1982).

■ Appellant's claim in the present case does not meet this threshold test.

When called as a witness by the military judge, Captain Mullis testified that his May 6, 1986, conversation with appellant did not involve appellant's real estate concerns. Captain Mullis first became aware of the charges against appellant at the Article 32 investigation. Captain Mullis immediately notified another prosecutor, not then involved in the case, of his attorney-client relationship with appellant on an unrelated matter. Upon the advice of the other attorney, Captain Mullis withdrew from further involvement in the case. Captain Mullis testified that he had not divulged any information regarding appellant to the prosecutors beyond the fact that he and appellant had discussed an unrelated matter in their May 1986 consultation.

Trial counsel, Captain Smith, also testified about his contacts with Captain Mullis, consistently with Mullis' testimony.

The military judge invited defense counsel to demonstrate prejudice to appellant. Defense counsel responded that he could not "envision" the members of the court-martial not being influenced by the evidence, but he offered no concrete demonstration of prejudice to appellant. In finding that appellant was not prejudiced by Captain Mullis' disclosure to the prosecution or by subsequent reference to this disclosure before the court-martial members, the military judge concluded that the evidence would have come in by other means, namely by introduction of a regulation that prohibits legal assistance officers from providing advice on income-producing activities to servicemembers. 30 MJ at 536.

The military judge found as a fact that the discussions between appellant and Captain Mullis were unrelated to the charged offenses but were instead "on a totally different matter," and that Captain Mullis did not divulge information protected by the attorney-client relationship to trial counsel. *Id.* at 534. Accordingly, there was no Article 27(a)(2) violation, and the prosecutors were not disqualified from prosecuting appellant under the *Stubbs* test.

■ Appellant, for the first time at oral argument, asserted that the Government not only discussed privileged information with Captain Mullis but also gleaned vital information from the note card maintained at the legal assistance office that contained information about appellant's contacts with Captain Mullis. Appellant directs our attention to the following exchange between the military judge and trial counsel during the session on appellant's motion for mistrial:

MJ: Did you discuss with Captain Mullis anything that was said to the accused?

TC: Absolutely not, sir, all—

MJ: Well, I don't understand what's going on here then.

TC: All he said was that he looked at his notes and he told Lieutenant Rushatz he had not spoken to him about this matter.

MJ: Then you did.

TC: And it's right on the note card at the Legal Assistance Office that—

[Defense Counsel loudly conferred.]

MJ: Ssh, be quiet.

TC: The—the time when the Lieutenant Rushatz, you know, came in, he said he had never talked to him about it and that's what he told him on that day.

IDC: Your Honor, I'm astonished. We move for a mistrial.

After examining the record, we conclude that, although trial counsel was insensitive to appellant's rights under his attorney-client relationship with Mullis, there is no

evidence that appellant was prejudiced by trial counsel's actions. The statement at the out-of-court session, which appellant failed to challenge before the military judge, the convening authority, or before the Court of Military Review, does not change our conclusion. First, appellant has failed to provide any real evidence that trial counsel actually saw the note card or that the card contained privileged information. Next, appellant has failed to demonstrate what advantage trial counsel gained from the information.

In *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), the accused had moved for dismissal of an indictment where federal agents "disparaged" her counsel and warned that her sentence might be stiffer if she did not cooperate with the agents. *Id.* at 362, 101 S.Ct. at 666. The Supreme Court assumed that this violated defendant's Sixth Amendment rights. *Id.* at 364, 101 S.Ct. at 667. Nonetheless, the Court unanimously concluded that this entitled her to no relief absent a showing "that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense." *Id.* at 365, 101 S.Ct. at 668. In the present case, appellant has failed to demonstrate how he was prejudiced by any misconduct of the prosecution. Accordingly, we agree with the Court of Military Review that the military judge did not abuse his discretion by denying appellant's motion for mistrial. 30 MJ at 537.

▮▮▮ Declaration of a mistrial is a drastic remedy, and such relief will be granted only to prevent a manifest injustice against the accused. *See United States v. Pastor*, 8 MJ 280, 281 (CMA 1980). The decision to grant a mistrial rests within the military judge's discretion, and we will not reverse his determination absent clear evidence of abuse of discretion. *United States v. Rosser*, 6 MJ 267, 270–71 (CMA 1979); *United States v. Jeanbaptiste*, 5 MJ 374, 376 (CMA 1978).

▮▮ If mention of appellant's contact with Mullis could in any way have created prejudice, the military judge alleviated it with this instruction:

Members of the court, when we broke earlier this morning, trial counsel had just asked the accused some questions relating to some—some consultation that the accused may have had with Captain Mullis. You are advised that trial counsel had no authority, no right, and it was highly improper for him to question the accused about any relationship he had with Captain Mullis. That's a—the accused has an absolute privilege to not discuss that and that's the attorney/client privilege and it's not even invoking his rights, it's not a question of that, it's that the trial counsel—that's a hands-off subject. Any time that trial counsel gets near it he's acting in a highly improper manner and you are instructed that you must disregard entirely anything that—anything that was discussed, anything that was mentioned of any relationship between the accused and Captain Mullis.

Is there any member of the court who cannot follow that instruction? Apparently not.

▮▮▮▮ Giving a curative instruction, rather than declaring a mistrial, is the preferred remedy for curing error when court members have heard inadmissible evidence, as long as the curative instruction avoids prejudice to the accused. *United States v. Evans*, 27 MJ 34, 39 (CMA 1988), *cert. denied*, 488 U.S. 1011, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989). Absent evidence to the contrary, a jury is presumed to have complied with the judge's instructions. *See Lakeside v. Oregon*, 435 U.S. 333, 340, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319 (1978); *United States v. Ricketts*, 1 MJ 78, 82 (CMA 1975); *Donaldson v. United States*, 248 F.2d 364 (9th Cir.1957), *cert. denied*, 356 U.S. 922, 78 S.Ct. 706, 2 L.Ed.2d 717 (1958). The military judge, therefore, did not abuse his discretion in denying appellant's motion for mistrial as the curative instruction was sufficient to purge any

prejudice to the accused. *United States v. Morris*, 13 MJ 297, 301–02 (CMA 1982) (separate opinions of Everett, C.J., and Cook, J.)

## II. THE OTHER ISSUES

As to each of the remaining issues, we adopt the decision of the Court of Military Review essentially for the reasons stated in its opinion. First, as to denial of appellant's motion for a new pretrial investigation based upon the activities of the investigating officer (IO), we share the conclusion of the Court of Military Review "that appellant has failed to demonstrate any prejudice as a result of these improprieties." [2] We further share the conclusion of the Court of Military Review that, "[a]ssuming *arguendo* that a presumption of prejudice would apply in this case, we find it to be sufficiently rebutted by the IO's testimony." 30 MJ at 532.

Next, as to the issue alleging prejudicial error from admission of uncharged misconduct evidence, we again adopt the reasoning and conclusion of the Court of Military Review. As that court stated, "A sufficient nexus ... existed between the extrinsic acts and the charged offenses to make the lieutenants' testimony relevant to either appellant's intent or the existence of a common plan or scheme." *Id.* at 540. This being the case, for the reasons more fully set out by the Court of Military Review, *id.* at 539–40, the rulings of the military judge admitting the questioned evidence met the established criteria for admissibility of evidence of uncharged misconduct:

1. Does the evidence reasonably support a finding ... that appellant committed prior crimes, wrongs or acts?
2. What "fact ... of consequence" is made "more" or "less probable" by the existence of this evidence [other than a predisposition of the accused to commit crime]?

3. Is the "probative value ... substantially outweighed by the danger of unfair prejudice"?

*United States v. Reynolds*, 29 MJ 105, 109 (CMA 1989), citing, *inter alia*, Mil.R.Evid. 403 (other citations omitted). We adopt the conclusion of the Court of Military Review that "the evidence was much more probative to the issues at trial than it was unfairly prejudicial.... Accordingly, this [issue] is without merit." [3]

■ Finally, as to the issue concerning trial counsel's "disparaging and disruptive gestures during the examination of defense witnesses," we find this assignment to be totally without merit. As the Court of Military Review noted, the record indicates two possible instances of what appellant describes as "prosecutorial misconduct." In the first of these, civilian defense counsel complained that trial counsel laughed during defense examination of a witness. In that instance, the military judge stated, "I didn't see it if he did anything, but if he did, he won't do it again." Second, during trial counsel's cross-examination of appellant, the military judge cautioned him once not "to smirk." Appellant now complains that there were other instances of improper behavior on the part of trial counsel which were never called to the attention of the military judge but which defense counsel urges we should find from affidavits subsequently inserted into the record.

The Court of Military Appeals does not sit to find facts.[4] We are a court of appellate review. Of course, we do not countenance unprofessional conduct or improper demeanor on the part of government counsel, or for that matter any counsel. Nonetheless, in the present case appellant offers us nothing of record that constitutes an error of any sort at trial or any stage of the proceedings upon which we could base a reversal or any other appellate relief. Again, therefore, we adopt the conclusion of the Court of Military Review and, like

---

**2.** 30 MJ 525, 532 (1990). For further details of the acts of the IO underlying this issue, *see id.* at 530–33.

**3.** 30 MJ at 540. For further details, *see generally id.* at 539–40.

**4.** *United States v. Harper*, 22 MJ 157, 161 (CMA 1986).

that court, "find no prejudice to the accused on the basis of trial counsel's behavior." [5]

### III.  CONCLUSION

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.

Judge SULLIVAN did not participate.

---

**5.**  30 MJ at 538.  For further details, *see generally id.* at 537–38.