**UNITED STATES**

v.

**Charles J. TURNER, 166–56–3781, Hospitalman Apprentice (E–2), U.S. Navy.**

**NMCM 94 00016.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 30 April 1992.

Decided 8 May 1995.

---

784

LT Alan D. Titus, JAGC, USNR, Appellate Defense Counsel.

Maj Albert Diaz, USMC, Appellate Government Counsel.

Capt Karen G. Dowling, USMCR, Appellate Government Counsel.

Before ORR and REED, Senior Judges and T.D. KEATING, J.

ORR, Senior Judge:

The primary issues in this case concern (1) the disclosure of information to members of this court-martial about a related case of an alleged co-conspirator and co-actor, and (2) whether the military judge abused his discretion by denying a defense motion for a mistrial after being informed of that disclosure. We have concluded that the judge did not err in denying the motion. These issues were raised by the appellant in the first of three assignments of error.[1] We have also considered the appellant's remaining two assignments of error, and we have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

Contrary to his pleas, the appellant was convicted by a panel of six officer and enlisted members of conspiring to commit an assault on members of "STA" (an acronym for "Surveillance and Target Acquisition") Platoon, disrespect to a staff sergeant, and four batteries on four other marines in violation of Articles 81, 91, and 128, respectively, Uniform Code of Military Justice [hereinafter "UCMJ" or "the Code"], 10 U.S.C. §§ 881, 891, 928 (1988). The appellant was sentenced to confinement for 3 months, forfeiture of $300.00 pay per month for 3 months, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and forwarded the record of trial for our review under Article 66, UCMJ, 10 U.S.C. § 866 (1988).

---

1. I. THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION FOR A MISTRIAL AFTER IT WAS DISCOVERED THAT AT LEAST ONE MEMBER KNEW AND DISCUSSED WITH THE OTHER MEMBERS THAT LCPL A.E. SCOTT, ONE OF THE NAMED CO-CONSPIRATORS IN APPELLANT'S CASE, HAD BEEN FOUND GUILTY BY A SEPARATE COURT-MARTIAL OF THE SAME ASSAULT CHARGES WITH WHICH THE APPELLANT WAS CHARGED.

II. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THE APPELLANT'S GUILT ON CHARGE I, CONSPIRACY TO COMMIT ASSAULT, OR THE ADDITIONAL CHARGE, SPECIFICATIONS 1–4, ASSAULT. (Footnote omitted.)

III. A SENTENCE WHICH INCLUDED AN UNSUSPENDED BAD-CONDUCT DISCHARGE WAS INAPPROPRIATELY SEVERE.

Approximately 7 weeks after the sentence was adjudged and prior to authentication of the record of trial, the military judge reconvened the court for a hearing under Article 39(a) of the Code, 10 U.S.C. § 839(a) (1988), for the purpose of considering an allegation that the members had improperly received extraneous information during the course of the appellant's trial. The appellant's trial defense counsel had reported to the judge that, after the court had adjourned, one member of the panel had indicated to him[2] that the member had received information that one of the co-conspirators named in the conspiracy specification against the appellant had been convicted and sent to the brig. This information had apparently been disclosed by another member of the panel, in the presence of all of the members, during a recess prior to the conclusion of the appellant's trial.

As a result of an individual *voir dire* of each member, it appears that the one member ["One"][3] who reported the incident to the trial defense counsel recalled hearing from another member ["Six"] that Lance Corporal [Lcpl] A.E. Scott, one of the appellant's alleged co-conspirators named in the Specification under Charge I, had been found guilty and placed in the brig "for the same offense." Record at 373. "One" thought the rest of the members were also present during the recess when this information was revealed and that the disclosure occurred during "the beginning part" of the trial. *Id.* at 374. He did state, however, that he did not recall any further discussion of the other case, that it never came up again, and that no mention of the sentence in the other case was made beyond the statement that Lcpl Scott was in the brig. *Id.* at 374–75.

One other member of the panel ["Two"] recalled that another member (also identified

by "Two" as member "Six") had mentioned that one of the other marines named in the conspiracy specification had already been found guilty. *Id.* at 376. It is not apparent from the record if anything more specific was said about exactly what the co-conspirator might have been found guilty of or if "Two" would have remembered even if he had been asked such a question. While "Two" thought the other case was first mentioned "in the later half of the trial," he wasn't sure, and he apparently did not recall the name of the co-conspirator. *Id.* He also stated that this other case was mentioned both during and after trial. While he was sure the other case was mentioned outside the courtroom, he could not remember if there had been any discussion of the sentence. *Id.* at 376–77.

The remaining four members recalled even less about any "discussion" of another case during the trial. One member ["Three"] initially denied being aware of any other matter or information coming to his attention from outside the courtroom during the appellant's trial, but when asked more specifically whether he remembered another member mentioning a related case, he said "something like that may have been floating around," but he couldn't remember what it was about. *Id.* at 378. Another member ["Four"] had no recollection of any other case being mentioned outside the courtroom, and while he remembered the name "Scott," he had no recollection of any mention of Scott's name outside the testimony during trial. *Id.* at 379. Likewise, "Five" had no recollection of any discussion or mention of any related case outside the courtroom. *Id.* at 380–81. "Six" said that while he was aware of Scott's case because he knew Scott before these offenses were supposed to have occurred, he thought he only heard of the outcome of Scott's case after the appellant's

---

2. The trial defense counsel apparently initiated contact with the president of the court after trial for the ostensible purpose of ascertaining "what [the] defense might have done differently in the case to perhaps have produced a different result." Record at 360. Although this case was tried more than a year prior to this Court's decision in *United States v. Thomas*, 39 M.J. 626 (N.M.C.M.R.1993), we suggested in that decision that the armed services adopt a uniform rule barring post-trial questioning of court members

by either counsel or a party without leave of the trial court or, after authentication of the record, of an appellate court. *Id.* at 641. We reiterate that suggestion here.

3. Rather than use the name of each member, we will refer to each member by a number, written as a word, corresponding to the sequence in which each member was individually questioned during the post-sentence, Article 39(a) session.

trial was completed, and he did not remember any discussion of Scott or his case. He said he had not heard anything about the Scott case prior to reporting for service as a member, and he did not recall either discussing that case with any of the other members or how he became aware of the case other than his recollection that it was mentioned after the appellant's trial was concluded. *Id.* at 382–83.

The trial counsel's report of the results of trial in the case of Lance Corporal A.E. Scott was attached to the record of trial as Appellate Exhibit XXXIX. That report indicates that, before a special court-martial composed of members and contrary to his pleas, Scott was found guilty of conspiring to commit an assault and of four separate batteries on the same four marines named in the four Article 128, UCMJ, specifications considered at the appellant's trial. Except for the potentially slight difference in the length of confinement (90 days vice 3 months), Scott received exactly the same punishment as that imposed on the appellant. As we have already mentioned, the appellant was also convicted of being disrespectful to a staff sergeant.

■ When an inquiry into the validity of the findings or the sentence is made, The Military Rules of Evidence specify:

[A] member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith, except that *a member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence.* . . .

Mil.R.Evid. 606(b) (emphasis added). The information the military judge sought from the members in this case clearly appears to fall within the scope of this rule, *see United States v. Accordino,* 20 M.J. 102, 103–04

(C.M.A.1985), and the procedure he followed was that outlined in *United States v. Stone,* 26 M.J. 401, 403 (C.M.A.1988). *See also United States v. Griffith,* 27 M.J. 42, 47 (C.M.A.1988); *United States v. Brickey,* 16 M.J. 258 (C.M.A.1983); *United States v. Wallace,* 28 M.J. 640 (A.F.C.M.R.1989).

■ Once that information had been obtained and the motion for a mistrial had been lodged, the Manual for Courts–Martial states, in applicable part, that "[t]he military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." Rule for Courts–Martial 915(a). Declaring a mistrial is a drastic remedy, however, and will be granted only to prevent a manifest injustice. *United States v. Rushatz,* 31 M.J. 450, 456 (C.M.A. 1990) (citing *United States v. Pastor,* 8 M.J. 280, 281 (C.M.A.1980)).

■ Although we reach the same result as the military judge did in deciding that a mistrial was not called for in this case, we do not necessarily agree with the judge's determination that it did not appear to him "the information revealed about the Scott case was extraneous." Record at 388. There were two aspects of the information about the Scott case known to at least one or more of the members: First, that an alleged coconspirator and co-actor with the appellant was convicted of the same offense or offenses charged against the appellant, and second, that the alleged co-actor and co-conspirator received confinement as a result of his conviction. The military judge seems to have reached his conclusion about whether the information was extraneous from the inability of "Six" to recall receiving the information about the Scott case from any outside source during the trial.

■ The correct basis for determining whether information is extraneous or not is whether the information was admitted as evidence during the trial or was a matter of common knowledge. If it was not admitted and is not commonly known, it is clearly extraneous. *See United States v. DiSalvo,*

34 F.3d 1204, 1225 (3rd Cir.1994); *cf. United States v. Johnson*, 23 M.J. 327 (C.M.A.1987) (holding that one member's demonstration to other members during deliberations of how victim would be unable to scream when strangled by weapon allegedly used by accused was not extraneous information); *United States v. Witherspoon*, 16 M.J. 252 (C.M.A.1983) (holding that member's sojourn to crime scene to view physical conditions was improper even if the same information was commonly known by other members and would have become known to that member during deliberations).

 Whether the information could have been properly admitted or not is relevant to determining the extent to which an accused may have been prejudiced by the information and to assessing the need for declaring a mistrial or some other form of relief. *Johnson; Witherspoon.* In this case, the conviction and incarceration of an alleged co-conspirator and co-actor would not have been relevant to any issue in the case and would have been inadmissible as evidence against the appellant.

As the Government points out, however, the conviction of Scott was not inconsistent with the appellant's contentions at trial because the defense theory of the case was that, while the assaults may have occurred and there may have been a conspiracy to commit them, the appellant was somewhere else during that time frame and did not participate in either a conspiracy or the assaults. Since Scott was only one of four named co-conspirators along with other, unnamed co-conspirators, the fact that Scott was convicted of a conspiracy would still not have conflicted with the appellant's defense theory. As the U.S. Court of Appeals for the Seventh Circuit has stated in a similar situation: "Where ... a defendant claims that he personally was ignorant of the criminal activity engaged in by others, the guilty plea of one of the others is not likely to inculpate him and thus is not likely to prejudice his case." *United States v. Weisman*, 736 F.2d 421, 425 (7th Cir.), *cert. denied*, 469 U.S. 983, 105 S.Ct. 390, 83 L.Ed.2d 324 (1984).

Consequently, we find no prejudice to the appellant from the fact that several members may have become aware that one of the appellant's several alleged co-conspirators and co-actors had been convicted of the same offense or offenses. We likewise find no prejudice to the appellant from the fact that some of the members were aware that the convicted co-conspirator and co-actor had received some otherwise unspecified sentence to confinement. There is no indication that the members were in any way influenced by that knowledge in arriving at the appellant's sentence. Therefore, since the appellant has not shown how he was prejudiced as a result of the extraneous information, we conclude that the military judge did not abuse his discretion by denying the motion for a mistrial.

As to the appellant's second and third assignments of error, we conclude that the evidence is legally sufficient to establish the appellant's guilt of the offenses of which he was found guilty, and we are, ourselves, convinced beyond a reasonable doubt of his guilt. *See United States v. Turner*, 25 M.J. 324, 324–25 (C.M.A.1987). We also find that an unsuspended bad-conduct discharge is not an inappropriately severe punishment under the circumstances of this case.

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

Senior Judge REED and Judge KEATING concur.