### UNITED STATES

v.

**Timothy S. DUNCAN, 484 94 7277, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 96 00701.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 4 May 1995.

Decided 31 July 1998.

---

LT Syed N. Ahmad, JAGC, USNR, Appellate Defense Counsel.

LCDR Nancy B. Jones, JAGC, USN, Appellate Government Counsel.

Before CLARK, Senior Judge, and WYNNE and LEO, Appellate Military Judges.

CLARK, Senior Judge:

At the appellant's general court-martial, a panel of members convicted him, contrary to his pleas, of several offenses[1] which consti-

1. **Charge I:** Violation of the Uniform Code of Military Justice [hereinafter UCMJ], Article 80

Specification 2: 24 July 1994, attempted armed robbery and strong-arm robbery of Jordan M. McLean, with a firearm and by striking him in the head with a 40–ounce beer bottle, in the body with fists, and kicking him in the head and body with feet, searching his clothing, and firing a weapon.

**Charge II:** Violation of the UCMJ, Article 81
Specification 1: 24 July 1994, conspire with Gambles and Miller to rob Jordan M. McLean and to kidnap [M];
Specification 2: 24 July 1994, conspire with Gambles to commit rape and forcible oral and anal sodomy of [M];

**Charge III:** Violation of the UCMJ, Article 120
Specification 1: 24 July 1994, in an area adjacent to Pacific Street, rape [M];
Specification 2: 24 July 1994, in a pickup truck, rape [M];

**Charge IV:** Violation of the UCMJ, Article 125
Specification 1: 24 July 1994, in an area adjacent to Pacific Street, commit forcible sodomy of [M] by placing Duncan's penis in [M]'s mouth;
Specification 2: 24 July 1994, in a pickup truck, commit forcible sodomy of [M] by placing Duncan's penis in [M]'s anus;
Specification 3: 24 July 1994, in a pickup truck, commit forcible sodomy of [M] by placing Miller's penis in [M]'s mouth;
Specification 4: 24 July 1994, in an area adjacent to State Street, commit forcible sodomy of [M] by placing Gambles' penis in [M]'s mouth;
Specification 5: 24 July 1994, in an area adjacent to State Street, commit forcible sodomy of [M] by placing Duncan's penis in [M]'s mouth, then in [M]'s anus, then in [M]'s mouth;

**Charge V:** Violation of the UCMJ, Article 134
Specification 1: 24 July 1994, kidnap [M];

Specification 3: 24 July 1994, unlawfully carry a Colt .380 semiautomatic handgun concealed on or about his person;
**Additional Charge I:** Violation of the UCMJ, Article 80
Specification 1: 24 July 1994, while attempting to perpetrate a robbery and a rape, attempt to murder Richard A. Schnittger by pointing and shooting at him with a Colt .380 semiautomatic handgun;
Specification 2: 24 July 1994, while perpetrating a rape, attempt to murder [M] by kicking her backwards over a cliff;
Specification 3: 17 June 1994, while perpetrating a rape, attempt to murder [R] by repeatedly striking her in the head and body with feet and fists, and by attempting to run over her body with an automobile as she lay on the ground;
Specification 4: 17 June 1994, attempt to commit forcible anal sodomy of [R] by placing Gambles' penis against the opening and trying to push it inside [R]'s anus;
**Additional Charge II:** Violation of the UCMJ, Article 81
Specification: 17 June 1994, conspire with Gambles to rob, kidnap, and rape [R];
**Additional Charge III:** Violation of the UCMJ, Article 120
Specification: 17 June 1994, rape [R];
**Additional Charge IV:** Violation of the UCMJ, Article 121
Specification: 17 June 1994, steal one purse containing miscellaneous items, $40.00 in U.S. currency, a clear plastic pager, a gold chain and locket, and miscellaneous items of women's clothing, value in excess of $100.00;
**Additional Charge V:** Violation of the UCMJ, Article 125
Specification: 17 June 1994, commit forcible sodomy of [R] by placing Duncan's penis in [R]'s mouth;

tuted two veritable crime sprees separated in time by about 5 weeks. The members adjudged a sentence which included confinement for life, forfeiture of all pay and allowances, reduction to pay grade E–1, a fine of $200.00, and a dishonorable discharge. The convening authority approved the adjudged sentence.

**Additional Charge VI:** Violation of the UCMJ, Article 134
Specification 1: 17 June 1994, kidnap [R];
Specification 2: 29 July 1994, communicate to LCpl Swenson a threat to kill Miller.

**2.** I. THE MILITARY JUDGE ERRED WHEN HE INSTRUCTED THE MEMBERS ABOUT COLLATERAL CONSEQUENCES OF THE SENTENCE.

II. THE MILITARY JUDGE ERRED WHEN HE DENIED THE MOTION TO SEVER THE CHARGES CONCERNING [R] AND [M].

III. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S CHALLENGE FOR CAUSE.

IV. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S REQUEST TO DEPOSE MS. [M].

V. THE CONVENING AUTHORITY WAS DISQUALIFIED FROM ACTING ON THIS COURT–MARTIAL.

VI. APPELLANT'S SENTENCE TO CONFINEMENT FOR LIFE IS INAPPROPRIATELY SEVERE.

VII. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT ATTEMPTED TO MURDER MR. SCHNITTGER.

VIII. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT ATTEMPTED TO MURDER MS. [M].

IX. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT ATTEMPTED TO MURDER MS. [R].

X. APPELLANT WAS PUNISHED BEFORE TRIAL BY BEING ASSIGNED TO MAXIMUM CUSTODY CONFINEMENT.

XI. THE MILITARY JUDGE ERRED WHEN HE ADMITTED, AS AGGRAVATION, EVIDENCE THAT MS. [M] HAD TO TESTIFY AT THE COURTS–MARTIAL, THAT SHE WAS TESTIFYING TO PROTECT OTHER WOMEN FROM APPELLANT, AND THAT SHE BELIEVED THAT SHE NEEDED THERAPY FOR THE REST OF HER LIFE. (Citations omitted.)

XII. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S REQUEST TO ADMIT EVIDENCE OF PROSTITUTION BY MS. [R] TO CORROBORATE APPELLANT'S TESTIMONY THAT SHE APPEARED TO BE A PROSTITUTE AND AGREED TO COMMIT SEXUAL ACTS AFTER BEING PICKED UP AS A HITCHHIKER, AND TO REBUT HER TESTIMONY

The appellant has submitted 17 assignments of error,[2] of which we will discuss several in detail. The supplemental assignment of error [3] is without merit and warrants no discussion. *See* Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7C of 3 Oct. 1990,

THAT SHE WAS NOT A PROSTITUTE. (Citations omitted.)

XIII. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S MOTION TO CONSOLIDATE CHARGE III, SPECIFICATIONS 1 AND 2 (RAPE OF [M]), CHARGE IV, SPECIFICATIONS 1 TO 5 (SODOMY OF [M]), ADDITIONAL CHARGE I, SPECIFICATION 4 AND ADDITIONAL CHARGE V AND THE SPECIFICATION THEREUNDER (SODOMY OF [R]), BECAUSE THE OFFENSES WERE COMMITTED IN A CONTINUOUS–COURSE–OF–CONDUCT ON THE SAME DAY WITH NO APPRECIABLE SEPARATION OF TIME. (Citations omitted.)

XIV. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S MOTION TO SUPPRESS HIS STATEMENTS MADE TO CORPORAL (THEN–LANCE CORPORAL) SWENSON BECAUSE CORPORAL SWENSON SUSPECTED APPELLANT OF AN OFFENSE, AND WAS IN HIS IMMEDIATE CHAIN–OF–COMMAND. (Citations omitted.)

XV. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S REQUEST FOR A NEW TRIAL AFTER LEARNING THAT ONE OF THE MEMBERS, DURING THE TRIAL, HAD SPOKEN WITH THE GOVERNMENT'S SOLE REBUTTAL WITNESS OUTSIDE THE COURTROOM. (Citations omitted.)

XVI. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT IS GUILTY OF RAPING [R], WHERE A MEDICAL EXAMINATION CONDUCTED IMMEDIATELY AFTER THE INCIDENT REVEALED THAT THERE WAS NO PHYSICAL EVIDENCE OF A RAPE, AND WHERE THE VICTIM WITNESS WAS INHERENTLY INCREDIBLE IN HER IDENTIFICATION OF APPELLANT DUE TO HER ADMITTED DRUG ADDICTION AND THE FACT THAT SHE WAS UNDER THE INFLUENCE OF DRUGS ON THE NIGHT OF THE ALLEGED INCIDENT. (Citations omitted.)

XVII. THE TRIAL COUNSEL COMMITTED PLAIN ERROR WHEN HE ARGUED THAT APPELLANT WAS "EVIL INCARNATE; THAT HE GIVES WHOLE NEW MEANING TO THE TERMS 'VICIOUS' AND 'MONSTER.'" (Citation omitted.)

**3.** APPELLANT WAS TRIED AND CONVICTED BY AN IMPROPERLY CONVENED COURT–MARTIAL ON CHARGES THAT WERE IMPROPERLY REFERRED TO IT, RENDERING SAID PROCEEDINGS VOID.

§ 0120a(1); Post–Trial Affidavit of Colonel Durrett.

### Assignment of Error I

During deliberations on the sentence the members presented an inquiry to the military judge. Appellate Exhibit CXXXIV contains the following two questions from the members:

(1) Will rehabilitation/therapy be *required* if PFC Duncan is incarcerated?

(2) In military justice, is parole granted or are sentences reduced for good behavior? If so do these reductions apply to a "life" sentence?

The military judge and counsel discussed the questions at a RULE FOR COURTS-MARTIAL 802, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.] conference, which is summarized in the Record at 2038–41. The military judge instructed the members, in pertinent part, as follows:

Now, members of the court, in answering this second question first, it is important to remind you of the nature of a court-martial in the military justice system. It is a completely independent agency temporarily created to determine the issue of guilt or innocence in a case and impose an appropriate sentence in the event of a conviction.

After trial a variety of reviewing and higher authorities review the case. As an independent agency, you must not adjudge an excessive sentence in reliance upon possible mitigating action by the convening or other authority. You must do what you think is right today.

Now, parole is available to an accused sentenced by a military court to serve confinement, including life imprisonment. The exercise of parole, however, depends upon several factors, including but not limited to the length of sentence to confinement, the nature of the convicted crimes, and the conduct of the accused during the period of confinement.

You should determine, in terms of confinement, what you feel is appropriate for this accused. Under these circumstances, do not, and I say again, do not be concerned about the impact of parole. When selecting an appropriate sentence, you should select a sentence which will best serve the ends of good order and discipline, the needs of the accused, and the welfare of society.

Now, I'm turning to your second [sic] question, which is: Will rehabilitation/therapy be required if PFC Duncan is incarcerated? Members of the court, you are advised that there are appropriate alcohol and sex offense rehabilitation programs available to the accused should he be confined as a result of the sentence in this case. The accused is not required to participate in any program of rehabilitation and treatment, but there are strong and usually effective incentives for him to do so while confined.

Record at 2043–44. The members deliberated another 40 minutes before returning with the sentence.

The defense had proposed the following instruction:

A question has been posed regarding the availability of parole and good behavior credit in the military correctional system. You are instructed that the military justice system has within it different integral parts that make up the whole. As a sentencing authority at a court-martial, you now perform just one of the functions that make up the military justice system as a whole. In determining an appropriate sentence in this case, you should determine what you feel is appropriate for this accused. As your role in the military justice system as a whole is a limited one, you should not concern yourselves about the impact of a possible parole or good behavior credit sometime in the future. For purposes of determining an appropriate sentence at this court-martial, you must assume that no parole or good behavior exists. Your part in the military justice system is an integral one, but it is essential that you perform only that function which is within your purview. As I have previously instructed you, you should select a sentence which will best serve the ends of

good order and discipline, the needs of the accused, and the welfare of society.

Appellate Exhibit CXXXV.

 The propriety of a collateral consequences instruction depends upon the particular facts and circumstances of a case. *United States v. Greaves*, 46 M.J. 133, 139 (1997). The military judge has the discretion to determine whether such an instruction is appropriate. *Id.*

 The gist of the appellant's argument seems to be that the military judge provided the members more information than they needed. We need not resolve that issue. The pertinent issue is whether the military judge provided the members proper guidance for determining an appropriate sentence. We find that he did. In addition to instructing the members as to the criteria for an appropriate sentence, the military judge emphasized to them that they should not be concerned about the impact of parole. This was not an abuse of his discretion.

 Absent evidence to the contrary, we may presume that the members followed the military judge's instructions. *United States v. Loving*, 41 M.J. 213, 235 (1994), *aff'd*, 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); *United States v. Holt*, 33 M.J. 400, 408 (C.M.A.1991); *United States v. Rushatz*, 31 M.J. 450, 456 (C.M.A.1990). The appellant has not shown that he was prejudiced by the military judge's instruction. We find no prejudice.[4] This assignment has no merit.

### Assignment of Error II

The military judge denied the defense motion to sever the charges relating to the 17 June 1994 incidents from those relating to the 24 July 1994 incidents. Afterwards, the military judge and the trial counsel took considerable measures to prevent spillover of evidence from one set of charges to the other.

The Government's brief does a good job of describing the steps taken by both the military judge and the prosecution to bifurcate the evidence relating to the two dates of the offenses:

> The military judge took great care to ensure that spillover between offenses did not occur. First, during *voir dire*, the military judge specifically instructed the members that each offense was required to stand on its own and that evidence of each offense must be kept separate. (R. 700–01). He repeated the spillover instruction before the members began to deliberate on findings. (R. 1835). Moreover, he emphasized that the burden of proof is always on the Government to prove each and every element of each offense beyond a reasonable doubt. *Id.*

Answer on Behalf of the Government at 11.

During the opening statement as well as the closing arguments, the trial counsel emphasized the separateness of the 17 June incidents from the 24 July incidents. After completing presentation of evidence relating to the 24 July incidents, the trial counsel announced, in the presence of the members, that presentation of evidence on the 24 July incidents had been concluded. Record at 1317. Before other evidence was presented, the military judge instructed the members of the separate and discrete nature of the sets of offenses. He emphasized that they "must keep the evidence of each offense and each set of offenses separate." Record at 1322. The members all indicated that they understood the instruction. Record at 1322–23. The prosecution then presented evidence relating to the 17 June incidents. Government witnesses who testified on both sets of offenses, *i.e.*, the nurse who examined both rape victims and a co-conspirator in the 24 July incidents, each testified on separate occasions to further ensure that their testimony would be considered in the proper context.

 Upon a motion for appropriate relief, a military judge may grant a severance of offenses, but only to prevent manifest injustice. R.C.M. 906(b)(10); *United States v. Curtis*, 44 M.J. 106, 128 (1996). In the appellant's case, the record does not indicate

---

4. We do not find that the disparity between the appellant's sentence, which included confinement for life, and that of PFC Gambles, which included confinement for 40 years, constitutes evidence that the members ignored the military judge's instructions.

that severance was necessary to prevent manifest injustice. It was within the discretion of the military judge to employ less radical measures to ensure the fairness of the proceedings. We find that the military judge did not abuse his discretion.

## Assignment of Error III

One of the members, Lieutenant Colonel Hammes, stated during *voir dire* that he had seen an article in a newspaper concerning three Marines involved in a rape and an assault in town. Following extensive questioning of the members, during which the member indicated he had no predisposition as to the guilt or innocence of the accused, the military judge denied the defense's challenge for cause of the member.

■ The fact that a member is acquainted with a case is not disqualifying. *United States v. Anderson*, 36 M.J. 963, 969 (A.F.C.M.R.1993), *aff'd*, 39 M.J. 431, *cert. denied*, 513 U.S. 819, 115 S.Ct. 79, 130 L.Ed.2d 33 (1994). A qualified juror need not be totally ignorant of the facts and issues involved. *United States v. Jobson*, 31 M.J. 117, 121 (C.M.A.1990)(quoting *Murphy v. Florida*, 421 U.S. 794, 799–800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)).

■ We find that the military judge did not abuse his discretion in denying the challenge for cause against Lieutenant Colonel Hammes. This assignment of error has no merit.

## Assignment of Error IV

■ Before the appellant obtained civilian counsel, his military defense counsel interviewed [M]. Afterwards, she would not agree to a pretrial interview by the appellant's civilian counsel. The military judge denied the defense motion for an order directing [M] to permit a pretrial interview and refused to prevent her from testifying. The appellant's claim that this constituted error is without merit. A witness has no obligation to submit to a pretrial interview. *United States v. Alston*, 33 M.J. 370, 373 (C.M.A. 1991); *United States v. Morris*, 24 M.J. 93, 95 (C.M.A.1987).

## Assignment of Error V

■ One of the appellant's accomplices in the crimes committed on 24 July 1994 was a Private Miller. At his own general court-martial, Private Miller pleaded guilty to certain offenses pursuant to a pretrial agreement. Private Miller testified at the appellant's general court-martial. The same convening authority convened both the appellant's court-martial and that of Private Miller. The appellant claims that the convening authority was disqualified from taking post-trial action on his case. This assignment of error is without merit. *United States v. Newman*, 14 M.J. 474, 482 (C.M.A. 1983).

## Assignment of Error VI

■ We are not convinced that the appellant's sentence is inappropriately severe. The appellant's argument that there is too great a disparity between his sentence and that of Gambles is also not persuasive.

The appellant and Gambles were accomplices in both of the crime sprees. Both pleaded not guilty at general courts-martial. Although the findings were similar, the facts establish different levels of participation by the two in the attempted murders of [M] and [R]. During the attempted murder of [R], the appellant was driving the car with which they attempted to run over her. The appellant was the one who actually kicked [M] over a cliff in the attempt to murder her. Although the trial court convicted Gambles of that offense, this court found insufficient evidence to affirm that finding. We are satisfied that there are good and cogent reasons for the disparity between the appellant's sentence and that of Gambles.

This assignment of error is without merit.

## Assignments of Error VII–IX, XVI

■ The appellant claims that there is insufficient evidence of his guilt to the attempted murders of Richard Schnittger, [M], and [R] and to the rape of [R]. We find no merit to these claims.

The evidence establishes that on 17 June 1994, the appellant and PFC Glenis Gambles rented a small, white, two-door Mazda 323. With Gambles driving, they picked up [R]

who was hitchhiking in Oceanside. She immediately announced to them that she was not a prostitute. She had become concerned upon realizing that the driver of the car was a Black man, since she had experienced some troubles before with Black men. After they refused to stop and let her out where she asked, she became panicked and begged them to let her out. She was being told that they were going to kill her. She tried to kick out the window of the back seat where she was riding. Eventually, the appellant and Gambles stopped in a remote area. Both the appellant and Gambles struck [R] several times with their fists and kicked her. She was forced to remove her clothes, except for her underpants. The appellant forced her to orally copulate him while simultaneously Gambles raped her from the rear and attempted to anally sodomize her, after ripping off her underpants. After Gambles got menstrual fluid on his clothing, he became enraged, pulled her from the car and beat her. Gambles then forced her back into the car, drove to another area, parked and beat her some more. She went limp and "played dead." They got into the car and started as if they were driving away, then turned and drove toward where she was lying on the ground. She jumped up and ran away. All of her possessions that she was carrying were taken away in the car. The appellant later gave her pager to his aunt and asked her to change the number. The appellant also bragged to some of his fellow Marines about having robbed and raped a girl whom he and Gambles had picked up.

The evening of 24 July 1994, the appellant, PFC Miller, and PFC Gambles agreed to go out and rob someone of their money. They set out on this expedition with Miller driving his pickup truck. After driving around, they spotted two females at a phone booth and approached them to rob them, but the females got into a car and left before the robbery could be completed. Apparently frustrated, the trio drove to Buccaneer Beach in Oceanside. There [M] and her friend, Jordan McLean, were sitting on the beach. Richard Schnittger and his eight months-pregnant wife were sitting in a car nearby, but not close enough for Schnittger to recognize [M] whose family he'd known for 8

years. The appellant and Gambles walked past [M] and McLean with the appellant carrying a 40–ounce bottle of St. Ides beer. They turned and approached the couple and the appellant struck McLean on the head with the bottle with sufficient force to break it. While the appellant beat up McLean, Gambles forced [M] along the beach and forced her to strip off her clothing, threatening her with the .380 Colt handgun which he had thoughtfully brought along. Schnittger saw the appellant beating McLean and got out of his car to try to intervene. Gambles, who was dragging a naked [M] along the beach, saw him approaching and fired the gun in his direction, motivating Schnittger to return to his car and depart the area. After patting down McLean's pockets, the appellant joined Gambles and struck [M] with his fist. He then forced [M] to orally copulate him while Gambles raped her from the rear. They then forced [M] into Miller's truck and drove her to another area, beating, raping and sodomizing her repeatedly along the way. They told her that they were going to kill her. They parked in a dark place, forced [M] out of the truck, and repeatedly raped and sodomized her. After they completed their sexual degradation of [M], the appellant lined her up and kicked her off a cliff.

About 5 days later the appellant learned that Miller was an unauthorized absentee. The appellant told Corporal Swenson that Miller had been messed up by them having hit a guy over the head with a bottle and raped a girl the previous week. He said that if Miller went to the police he would kill him.

 Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c)(1994)[hereinafter UCMJ], requires this court to determine not only the legal sufficiency of the evidence, but also its factual sufficiency. The test for legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987). Applying this test we must "draw every reasonable infer-

ence from the evidence of record in favor of the prosecution." *United States v. McGinty*, 38 M.J. 131, 132 (C.M.A.1993)(quoting *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991)). In doing so, appellate courts acknowledge "the responsibility of the trier of fact to resolve conflicts in the testimony, to weight [sic] the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Hart*, 25 M.J. 143, 146 (C.M.A.1987)(quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781).

■ The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, ... [we are] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325.

We are convinced beyond a reasonable doubt of the appellant's guilt, legally and factually, of all of the offenses of which he was convicted.

## Assignment of Error X

■ The appellant has not established that any of the conditions of his confinement were meant as punishment. We are satisfied that the limitations placed on the appellant's freedom were directly related to the orderly operation of the brig, served a legitimate governmental function, and were no more rigorous than were required to ensure the appellant's presence at trial. This assignment of error has no merit.

## Assignment of Error XI

■ A Family and Marriage Therapist who had met with [M] for about 20 hours testified in aggravation that the testimony was becoming progressively more traumatizing for [M]. She testified that [M]'s expressed motivation for continuing to testify was to protect herself and to protect other women from the appellant. Her prognosis was that [M] would require therapy for the remainder of her life. The military judge did not abuse his discretion in admitting this testimony. R.C.M. 1001(b)(4). This assignment of error is without merit.

## Assignment of Error XII

The appellant testified that as soon as [R] entered the rental car she indicated that she was not a prostitute. Record at 1675. Later he testified that he could only assume that she was either a prostitute or a street girl, the difference being that a prostitute gets paid for sex. Record at 1711. He testified that he did not offer money to [R] and she did not request any. Record at 1712.

■ Whether [R] had a history of prostitution is not relevant to any issue of fact that the court-martial had to determine. The appellant testified as to his perception that the sex with [R] was consensual. He did not testify that he based this belief on her history of prostitution, but rather on his assumption that she was a prostitute or street girl. Therefore, even if she had a history of prostitution, evidence of it would not have been relevant. MIL.R.EVID. 401, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). The military judge did not abuse his discretion by refusing to admit such evidence. MIL.R.EVID. 402.

## Assignment of Error XIII

■ The military judge did not abuse his discretion when he denied the defense motion to consolidate charges of rape and sodomy for offenses which occurred at different times and places. *United States v. Teters*, 37 M.J. 370 (C.M.A.1993).

## Assignment of Error XIV

■ The appellant summarily claims that the military judge erred by denying the defense motion to suppress statements the appellant made to his roommate, Lance Corporal [LCpl] Swenson, asserting that LCpl Swenson suspected the appellant of an offense and was in his chain of command. This assignment of error is without merit.

Although the military judge neglected to include his essential findings relating to this motion, we are able to determine the relevant facts employing our Article 66(c), UCMJ, 10 U.S.C. § 866(c), fact-finding powers. *United States v. Spriddle*, 20 M.J. 804, 806 (N.M.C.M.R.1985).

The statements the appellant made in LCpl Swenson's presence on 29 July 1994 were spontaneous. There is no indication of prompting or interrogation by LCpl Swenson. There is no indication that LCpl Swenson suspected the appellant of any crime, with the possible exception of public drunkenness. Lance Corporal Swenson was not required to advise the appellant to not brag about his evening exploits. Article 31(b), UCMJ, 10 U.S.C. § 831(b).

On 29 July 1994, LCpl Swenson suspected PFC Miller, their other roommate, of being UA. His colloquy with the appellant was to try to determine the reason for Miller's absence. He had no reason to believe that Miller's absence was related to any crime committed by the appellant. He had no reason to believe that the appellant was guilty of anything more serious than being a braggart and a loud-mouth. His conversation with the appellant was not an interrogation about crimes he suspected the appellant of committing. The incriminating statements volunteered by the appellant were non-responsive to the queries of LCpl Swenson. They were, in effect, spontaneous exclamations. Article 31(b), UCMJ, 10 U.S.C. § 831(b) warnings were not required. *United States v. Brown*, 40 M.J. 152 (C.M.A.1994); *United States v. Davis*, 36 M.J. 337, 340 (C.M.A.1993), *aff'd*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

## Assignment of Error XV

During the testimony of the rebuttal witness, Cpl Kruse, one of the members, First Lieutenant Shelton, recognized that the two of them had served in the same unit. During a recess, the member and the witness encountered each other in the vicinity of the courtroom. During a post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a) session, the member testified that he was not influenced by this contact with Cpl Kruse and that he followed the military judge's instructions. They briefly talked about people they knew from the unit. Neither mentioned the appellant's case.

 The presumption of prejudice arising from communications between a member and a witness is a rebuttable one. *United States v. Elmore*, 33 M.J. 387, 394

(C.M.A.1991)(quoting *United States v. Adamiak*, 4 C.M.A. 412, 417, 15 C.M.R. 412, 417 (1954)). The presumption is rebutted by a clear and positive showing that the communication did not and could not operate in any way to influence the decision of the members. *Elmore*, 33 M.J. at 394 (quoting *Adamiak*, 4 C.M.A. at 418, 15 C.M.R. at 418).

 We are satisfied that the presumption of prejudice was rebutted in the appellant's case. The military judge did not err in denying the defense motion for a new trial.

## Assignment of Error XVII

The appellant's civilian defense counsel, in his first opening statement before the government's case-in-chief, characterized the trial counsel's opening statement as portraying the appellant as a "vicious, evil, awful human being." Record at 915. In his second opening statement, after the government had rested its case but before presentation of any defense evidence, the civilian defense counsel told the members that the evidence would show that the accused was a "pretty good guy." Record at 1603. The defense then presented testimony from three witnesses and the appellant, the gist of which was that the appellant was a "pretty good guy." *See* Testimony of Mrs. Atkins, Record at 1606–11; Testimony of Mrs. McLaurin, Record at 1611–17; Testimony of Miss Gaceta, Record at 1618–26; Testimony of the appellant, Record at 1668–1717.

In rebuttal, the Government presented evidence that characterized the appellant as worthless as a Marine, as someone who referred to women in profanely derogatory terms, and as an untruthful person. Record at 1719–27.

In the Government's argument on the sentence, the trial counsel referred to both of the civilian counsel's arguments and the efforts to show "Duncan the man, Duncan the Marine," to refute the evidence of the appellant's viciousness. Trial counsel stated, "I submit to this court that he is evil incarnate; that he gives whole new meaning to the terms 'vicious' and 'monster.' " Record at 2019. The appellant claims that this part of

**808**

the trial counsel's argument was plain error. We disagree.

■ The trial counsel's arguments must be based on a fair reading of the record of trial. *United States v. Kropf,* 39 M.J. 107, 108 (C.M.A.1994). "[A] trial counsel is well within his rights to strike hard blows by forcefully commenting on the evidence presented at trial." *United States v. Waldrup,* 30 M.J. 1126, 1132 (N.M.C.M.R.1989).

We need not reiterate our summary of the sufficiency of the evidence of the appellant's guilt. Our earlier summary does not adequately reflect the brutality, the callousness, the viciousness of what the appellant did to his victims. We do not portray as graphically as did the witnesses and the evidence the harm that the appellant did to his victims. The record, however, does establish that the appellant committed crimes of violence the brutality of which we perceive as far exceeding the common experience of most court members.

■ The trial counsel's characterization of the appellant as "evil incarnate" is a fair comment upon what the evidence had established and what the members had found to be fact, as was reflected in the verdicts. Such a statement merely portrayed the appellant as a personification of an entity which causes injury or harm. *See* THE RANDOM

HOUSE COLLEGE DICTIONARY 458, 672 (rev. ed.1980). Saying that the appellant's conduct was monstrous merely recognized what the members had found; it "deviat[ed] grotesquely from what is natural or normal." *Id.* at 865. Calling the appellant "vicious" was appropriate, if redundant. *Id.* at 1466.

The challenged statement was a single sentence appearing near the end of an argument which was transcribed over seven single-spaced pages. Having considered that single sentence in context, we are satisfied that the appellant has assigned to it far more significance than the members ever did. We are satisfied that the members did not sentence the appellant for what the trial counsel said. They sentenced the appellant for what he did.

### Conclusion

Accordingly, we affirm the findings and the sentence as approved on review below.

Judge WYNNE and Judge LEO concur.