# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39559**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Ryan G. URIBE**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 April 2020

————————————

*Military Judge:* Donald R. Eller, Jr. (arraignment); Mark F. Rosenow.

*Approved sentence:* Dishonorable discharge, confinement for 20 months, reduction to E-1, and a reprimand. Sentence adjudged 15 March 2018 by GCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Major Rodrigo M. Caruço, USAF; Bethany L. Payton-O'Brien, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges*.

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge POSCH and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

J. JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of one specification of sexual assault on divers occasions in violation of Article 120, Uniform Code of Military Justice (UCMJ),

10 U.S.C. § 920.[1,2] The military judge sentenced Appellant to a dishonorable discharge, confinement for 20 months, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence, but pursuant to Articles 57 and 58b, UCMJ, 10 U.S.C. §§ 857, 858b, Appellant's reduction in grade and mandatory forfeitures were deferred until action and the mandatory forfeitures were then waived for a period of six months for the benefit of Appellant's dependent children.

Appellant raises ten issues on appeal: (1) whether the military judge erred by denying the Defense's motion to dismiss due to assistant trial counsel's prior representation of Appellant; (2) whether the military judge erred by denying the Defense's motion that he recuse himself; (3) whether the evidence was legally and factually sufficient; (4) whether Appellant received ineffective assistance of counsel with respect to his selection of forum; (5) whether the trial counsel engaged in prosecutorial misconduct; (6) whether Appellant was punished in excess of the approved sentence; (7) whether the Government's failure to provide all recordings of Appellant made by the victim violated Appellant's right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963); (8) whether the military judge erred by admitting evidence pursuant to Mil. R. Evid. 404(b); (9) whether Appellant received ineffective assistance of counsel with respect to the Defense's failure to seek certain discovery; and (10) whether prison officials violated Appellant's rights under the Prison Rape Elimination Act, 34 U.S.C. § 30302 (2016).[3,4] In addition, although not raised by Appellant, we consider whether he is entitled to relief for unreasonable post-trial delay. With respect to issues (7), (8), and (10), we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With respect to the remaining issues, we do not find error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial (R.C.M.), and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The military judge found Appellant not guilty of a second specification of non-divers sexual assault in violation of Article 120, UCMJ.

[3] We have slightly reordered the issues Appellant presents in his brief, and we address the separate allegations of ineffective assistance of counsel (issues (4) and (9)) together.

[4] Appellant raises issues (7), (8), (9), and (10) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1992).

## I. BACKGROUND

Appellant met Ms. AC in November 2008, before he joined the Air Force. They married on 1 August 2009, approximately ten days before Appellant traveled to San Antonio, Texas, for basic training. After basic training and technical school, Appellant was assigned to Schriever Air Force Base (AFB), Colorado, from March 2010 until October 2014. Ms. AC lived with Appellant in Colorado, where their first and second children were born. Ms. AC moved with Appellant to Joint Base San Antonio-Lackland (JBSA-Lackland), Texas, in 2014, where a third child was born.

At trial, Ms. AC testified that on multiple occasions she had awakened to find Appellant was digitally penetrating her vagina while she was asleep. She stated these incidents of digital penetration occurred "throughout" her marriage to Appellant, but the earliest specific incident she could recall was in September 2012 when she was pregnant with their second child. Ms. AC testified that she reacted to these incidents in different ways; sometimes she would swat Appellant's hand and tell him to stop, sometimes she would grab his hand and push it away, sometimes she would simply "space out." However, Ms. AC testified these incidents never led to consensual sexual activity, and she would "always" tell Appellant the following day that digitally penetrating her when she was asleep "was not okay." Although she did not consent to these incidents, Ms. AC was reluctant to leave or divorce Appellant, in part because her religious upbringing taught her that divorce was "wrong."

In addition to the September 2012 incident, Ms. AC described two other specific instances when Appellant digitally penetrated her while she was asleep. One occurred around Thanksgiving in 2015 when she and Appellant were visiting her family in Tennessee. Ms. AC testified that on this occasion, Appellant digitally penetrated her anally[5] as well as vaginally. The last incident occurred in mid-January 2016 in San Antonio. By this time, Ms. AC had described incidents of Appellant digitally penetrating her while she slept to two of her friends, separately and over the course of multiple conversations.

In January 2016, a few days after the final incident, Ms. AC made a restricted report of sexual assault within the Air Force. In February 2016 Ms. AC moved out of Appellant's home and filed in Texas for an uncontested divorce. Between February and June 2016, Appellant made repeated attempts to reconcile with Ms. AC. As part of this effort, Appellant communicated directly with Ms. AC's mother, Ms. RC, by phone and text message, explaining

---

[5] Appellant was acquitted of one specification of sexual assault between on or about 1 November 2015 and on or about 30 November 2015 by penetrating Ms. AC's anus with his finger, also in violation of Article 120, UCMJ.

his perspective and seeking Ms. RC's support. In addition, Appellant had numerous telephone conversations with Ms. AC, many of which Ms. AC recorded without Appellant's knowledge.

On 3 June 2016, Ms. AC made an unrestricted report of sexual assault to the JBSA-Lackland Family Advocacy office, which contacted the Air Force Office of Special Investigations (AFOSI). In the summer of 2016, Ms. AC moved to her parents' home in Tennessee, where she re-filed for divorce. Ms. AC and Appellant divorced prior to Appellant's trial in February and March 2018; Ms. AC had primary physical custody of their children.

Ultimately, Appellant was convicted of one specification of sexual assault on divers occasions between on or about 1 September 2012 and on or about 1 March 2016 by penetrating Ms. AC's vulva with his finger, with the intent to gratify his sexual desire, when he knew or reasonably should have known she was asleep, in violation of Article 120, UCMJ.[6]

## II. DISCUSSION

### A. Motion to Dismiss for Prior Representation

#### 1. Additional Background[7]

On 1 June 2016, Appellant sought legal assistance at the JBSA-Lackland legal office with regard to documents he believed were prepared by Ms. AC's divorce attorney. Appellant met for approximately 30 minutes with Captain (Capt) GS, one of the judge advocates assigned to the office. The documents reflected an intent to divorce based on irreconcilable differences; they addressed matters of child custody, visitation, and support, but did not include any allegations of sexual misconduct or other abuse. Appellant did not raise or seek advice with respect to any potential allegations of sexual abuse at the meeting. Capt GS did not undertake to prepare any documents for Appellant or to represent him in any capacity as a result of this meeting. This was the only meeting between Capt GS and Appellant related to legal assistance.

Two days later, on 3 June 2016, Ms. AC made her unrestricted report of sexual assault. The AFOSI began its investigation of Appellant shortly thereafter. AFOSI agents periodically briefed JBSA-Lackland legal office attorneys, including Capt GS, on the progress of their investigation. Prior to the preferral

---

[6] The specifications reflect Ms. AC's married name; this opinion refers to her by the initials of her maiden name, which she employed as of the date of Appellant's trial.

[7] This additional background is drawn primarily from Judge Eller's written findings of fact with respect to the defense motion to dismiss, which we find to be substantially supported by the record and not plainly erroneous.

of charges, Capt GS reviewed the report of investigation and evidence obtained by AFOSI, consulted with AFOSI agents on several occasions, and prepared a proof analysis and drafted the initial specifications.

On 24 March 2017, Appellant's commander preferred the initial charge and four specifications against Appellant. All of the specifications alleged various sexual assaults against Ms. AC. Capt GS was present at the preferral and swore the commander to the allegations.

On 9 May 2017, a preliminary hearing on the initial charge and specifications was held pursuant to Article 32, UCMJ, 10 U.S.C. § 832. Capt GS represented the Government at the hearing. The preliminary hearing officer (PHO) found probable cause lacking with respect to three of the four specifications.

On 5 July 2017, Appellant's commander preferred two additional charges and four specifications against Appellant. This time, Capt GS was not the judge advocate who swore the commander to the allegations. Capt GS transferred to another base in July 2017 and had no further involvement as a trial counsel in Appellant's prosecution.

A second Article 32, UCMJ, preliminary hearing was conducted on 6 September 2017 by the same PHO who conducted the May 2017 hearing. The PHO again found some of the specifications lacked probable cause. The convening authority ultimately referred to trial two specifications of one of the additional charges, alleging sexual assault by Appellant digitally penetrating Ms. AC's vulva and anus while she was asleep.

At some point before trial, a record of Appellant's 1 June 2016 legal assistance appointment with Capt GS came to light. Before trial, the Defense moved to dismiss the referred charge and specifications based on Capt GS's participation in Appellant's prosecution. The Government opposed the motion. At Appellant's arraignment on 2 February 2018, Judge Eller held a hearing on the motion at which he received evidence and heard argument from counsel. Among other witnesses, Capt GS testified at the hearing. Capt GS stated he remembered little of his role in the investigation or prosecution of Appellant's case, and he remembered nothing of Appellant's legal assistance appointment.

In a written ruling, Judge Eller denied the defense motion to dismiss. He noted that at the hearing the Defense withdrew its claim that specific confidences from the 1 June 2016 legal assistance appointment were used against Appellant in his prosecution, and Judge Eller found no reasonable probability that such confidences had been used. Judge Eller further found there was no "substantial relationship" between the legal assistance appointment and Appellant's prosecution for sexual assault. However, "mindful of the concerns with appearance," Judge Eller "direct[ed] that the Trial Counsel and any personnel associated with the prosecution of the present case will have no contact

with Capt [GS] in any form until this court-martial has adjourned." Judge Eller further found that even if he was in error and the facts did establish a substantial relationship between the court-martial and Capt GS's prior relationship with Appellant, dismissal with prejudice would not be warranted; instead, disqualification of Capt GS would be an adequate remedy in this case.

**2. Law**

A military judge's ruling regarding a motion on trial counsel's disqualification is reviewed for an abuse of discretion. *See United States v. Humpherys*, 57 M.J. 83, 88 (C.A.A.F. 2002) (citation omitted). We also review a military judge's selection of a remedy for an abuse of discretion. *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

A prior attorney-client relationship with an accused may disqualify an attorney from serving as trial counsel on either of two independent grounds. *Humpherys*, 57 M.J. at 87. The United States Court of Appeals for the Armed Forces (CAAF) has explained:

> First, an attorney may be disqualified if the current representation is adverse to a former client, and the prior representation of that client involved the same or a substantially related matter. . . . Second, an attorney may be disqualified if there is a reasonable probability that specific confidences from the prior representation may be used to the disadvantage of the former client.

*Id.* (citations omitted).

Applying the substantial relationship test involves a three-part analysis. *Id.* "Specifically, the accused must establish: (1) the former representation; (2) a substantial relation between the subject matter of the former representation and the issues in the later action; and (3) the later adverse employment." *United States v. Rushatz*, 31 M.J. 450, 454 (C.M.A. 1990) (citation omitted). "The substantial relationship test does not require demonstration of specific confidences that might be used against the former client." *Humpherys*, 57 M.J. at 87 (citing *Rushatz*, 31 M.J. at 454).

In contrast, the confidential information test "does not require proof of a substantial relationship," but requires the accused to "demonstrate . . . specific confidences related during the prior representation and how they could be used to the disadvantage of the accused in the subsequent representation." *Id*. at 88 (citing *Evans v. Artek Systems Corp.*, 715 F.2d 788, 794 (2d Cir. 1983)).

**3. Analysis**

A prior attorney-client relationship with the accused is not per se disqualifying for a trial counsel. *See id*. at 87. In this case, the military judge did not abuse his discretion by concluding Capt GS's 1 June 2016 legal assistance appointment with Appellant did not disqualify him as a trial counsel under either the confidential information or substantial relationship tests.

With respect to the confidential information test, we agree with the military judge, as conceded by the Defense at trial, that there simply was not evidence to demonstrate a reasonable probability that specific confidences from Appellant's legal assistance appointment with Capt GS were used against him. Capt GS testified at the motion hearing that he had no memory of the appointment. Appellant, testifying for the limited purpose of the motion hearing, stated that it was a single appointment to review the uncontested divorce documents. On examination by the military judge, Appellant stated he saw nothing in the AFOSI report of investigation that would have originated with his legal assistance appointment. The Government called two AFOSI agents who testified to the effect that, although Capt GS was briefed on the progress of the investigation multiple times, the legal office provided no substantive leads for the investigation. Neither at trial nor on appeal has the Defense identified specific confidences to Capt GS that were or could have been used to Appellant's disadvantage at trial.

On appeal, as at trial, the Defense relies on the substantial relationship test. We find no abuse of discretion by the military judge on this count, although it is a much closer question. It is evident, and the Government conceded at trial, that the first and third elements of the substantial relationship test are met—that is, Capt GS had a prior attorney-client relationship with Appellant, and Capt GS's subsequent role in the prosecution was adverse to Appellant. *See Rushatz*, 31 M.J. at 454. With respect to a "substantial relation" between the two roles, the military judge acknowledged "the Defense may intend to cross-examine [Ms. AC] . . . concerning possible motivating factors for her reporting of the alleged misconduct and later testimony in court," which the Defense asserted included "the enmity leading to the separation, divorce, and possible child custody disputes." In fact, the Defense did raise such matters. Nevertheless, further acknowledging marital enmity may have in fact been a motivating factor in the decision to report, Judge Eller found the Defense failed

to demonstrate the "commonality of relationship between the prior relationship and the present prosecution." He explained:

> The evidence indicates [Appellant] carried paperwork to Capt [GS] for review. The paperwork reflected the marriage between [Appellant] and [Ms. AC] was being dissolved for irreconcilable differences. No information was shared suggesting [Ms. AC] was the victim of domestic violence, and Capt [GS] was unaware of any particular details about the relationship which warranted referral of [Appellant] to a defense attorney.

We cannot say Judge Eller's conclusion—that a simple review of draft documents for an uncontested divorce was not *substantially* related to Ms. AC's allegations of sexual assault—met the strict standard for an abuse of discretion. Clearly, the divorce was not *unrelated* to the prosecution. Ms. AC herself testified that Appellant's continued unwanted digital penetrations were what drove her to leave Appellant and seek a divorce. However, there is no evidence the substance of the legal assistance appointment was material to the substantial issues at Appellant's trial, and it was the Defense's burden to make that connection. *See Humpherys*, 57 M.J. at 87. Under these circumstances, we cannot say Judge Eller's ruling was "'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *Ellis*, 68 M.J. at 344 (citation omitted).

Furthermore, assuming *arguendo* that the legal assistance appointment was substantially related to Appellant's prosecution, we agree with the military judge that dismissal with prejudice would not have been an appropriate remedy. Appearances aside, as described above there is no indication that information Appellant disclosed at the appointment was used to his material prejudice in the investigation or prosecution of the case. Moreover, Capt GS had ceased serving as trial counsel more than six months before Appellant's trial commenced. Dismissal, with or without prejudice, is a "drastic remedy" to be used as a "last resort." *United States v. Douglas*, 68 M.J. 349, 354–55 (C.A.A.F. 2010) (citations omitted). We find Judge Eller's ruling that the Prosecution would have no contact with Capt GS until Appellant's court-martial adjourned was an adequate remedy under the circumstances.

To be clear, our conclusions should in no way be interpreted as an indorsement of Capt GS's appointment as trial counsel for Appellant's case or Capt GS's failure to identify the potential conflict. Although we are not surprised that a judge advocate may not remember a particular routine legal assistance client, it goes without saying that there should be a process to screen counsel for such potential conflicts. In this case, Capt GS's prior relationship with Appellant did not compromise the substantial fairness of the trial. If the facts had been different, it might have done so, with more drastic consequences.

**B. Military Judge Recusal**

**1. Additional Background**

The first military judge detailed to Appellant's court-martial was Judge Eller, who presided at Appellant's arraignment and hearing on the defense motion to dismiss held on 2 February 2018. On 1 March 2018, Judge Eller detailed Judge Rosenow to be the trial judge when Appellant's court-martial resumed on 12 March 2018.

On 8 March 2018, the Defense moved to have Judge Rosenow recuse himself from the case, on the basis that Judge Rosenow's friendship with the senior trial counsel assigned to the case, Major (Maj) BJ, would undermine "public confidence in the fairness of the trial." Attached to the motion was a summary of the Defense's interview of Maj BJ on 8 March 2018, wherein he disclosed the following information: Maj BJ met Judge Rosenow in 2012, but their interactions were limited until they were both assigned as senior trial counsel based in the Washington, D.C., area beginning in mid-2014. During the following year, they discussed legal issues in the office and occasionally spent time together off-duty. Maj BJ attended Judge Rosenow's bachelor party and wedding in 2015. In the summer of 2015, Maj BJ was reassigned to be a senior trial counsel based at Travis AFB, California. In 2016, Judge Rosenow was assigned to Travis AFB as a military judge. Although assigned to the same base, once Judge Rosenow became a military judge his interactions with Maj BJ were more limited, and they no longer discussed cases or legal issues. Since 2016, Judge Rosenow and Maj BJ had spent time together socially approximately five times. On all but one of those occasions, Judge Rosenow's wife and Maj BJ's girlfriend were also present. On some unidentified date Judge Rosenow's wife went into labor while Judge Rosenow and Maj BJ were both out of town; Maj BJ's girlfriend went to the hospital and was present for the birth.

The Government, through Maj BJ, did not oppose the recusal motion. In an email appended to the record, Maj BJ stated that "both sides are simply concerned about the perception of fairness of the proceedings, not only from [Appellant's] perspective (especially with the previous motion heard in this case), but also from an outsider as well."[8] Neither party requested a hearing on the motion or to question Judge Rosenow.

---

[8] The reference to a "previous motion" was evidently a reference to the motion to dismiss that Judge Eller had denied, as described above.

Judge Rosenow issued a written ruling on 9 March 2018. In his findings of fact, Judge Rosenow supplemented the motion with additional factual information from his personal knowledge.[9] He clarified, *inter alia*, that his wife's labor was an emergency situation, that no other military judges were in town at that time, and that Judge Rosenow and his wife had no friends or family in the area of Sacramento, California, where they lived. Judge Rosenow also stated he "ha[d] no personal bias or prejudice concerning any party of counsel for that party" in the present case, and "no personal knowledge of disputed evidentiary facts concerning this proceeding." Judge Rosenow further clarified he interpreted the Government's non-opposition to be in effect a joint request by the Defense and Government in light of the concerns Maj BJ had expressed regarding public perceptions.

Despite the parties' joint concerns, Judge Rosenow denied the motion. He explained:

> [T]he Court may not delegate its responsibility to determine whether disqualification is appropriate and no information the parties have presented affects the military judge's previous determination that his impartiality cannot reasonably be questioned. The necessary and underlying logic of the motion for recusal is that the military judge's earlier professional and social interactions with the [senior trial counsel] would somehow influence, or appear to influence, his broad discretion in ensuring a fair trial is conducted. . . . The Court is simply unconvinced that a reasonable person knowing all the circumstances – including especially the relatively limited involvement professionally and socially, the deliberate and increased separation since the military judge's reassignment, the span of time and settings in which the military judge has served as a military judge[10] and his ruling's lengthy statement of impartiality – would harbor doubt on this measure.

(Footnote added.) Judge Rosenow cited the following additional considerations: that he had thoroughly compared the instant case to numerous precedents;

---

[9] Judge Rosenow explained this information was "derived from the military judge's personal knowledge, would have been provided in response to questioning [by the parties] under R.C.M. 902(d)(2) and [was] not a form or substitute for witness testimony." *See* Mil. R. Evid. 605 (prohibiting the presiding military judge from testifying as a witness at a court-martial).

[10] In another portion of the ruling, Judge Rosenow stated that as of 9 March 2018 he had presided over more than 40 trials that reached findings.

that he considered Judge Eller's rulings on the motion to dismiss were appropriate and "did not leave any residuum of unfairness;" and that "the types of relationships identified in this case as potentially disconcerting by the parties" were common within The Judge Advocate General's Corps. Finally, he "specifically disclaim[ed] any offense whatsoever in the parties individually and jointly presenting this concern for adjudication."

### 2. Law

We review a military judge's ruling on a motion that he recuse himself for an abuse of discretion. *United States v. Sullivan*, 74 M.J. 448, 454 (C.A.A.F. 2015).

"An accused has a constitutional right to an impartial judge." *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999) (citations omitted). R.C.M. 902 governs disqualification of the military judge. R.C.M. 902(b) sets forth five specific circumstances in which a "military judge shall disqualify himself or herself." In addition, R.C.M. 902(a) requires disqualification "in any proceeding in which th[e] military judge's impartiality might reasonably be questioned." Disqualification pursuant to R.C.M. 902(a) is determined by applying an objective standard of "whether a reasonable person knowing all the circumstances would conclude that the military judge's impartiality might reasonably be questioned." *Sullivan*, 74 M.J. at 453 (citing *United States v. Hasan*, 71 M.J. 416, 418 (C.A.A.F. 2012)).

"There is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle . . . ." *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001) (citation omitted). "Although a military judge is to 'broadly construe' the grounds for challenge, he should not leave the case 'unnecessarily.'" *Sullivan*, 74 M.J. at 454 (quoting R.C.M. 902(d)(1) Discussion). "Of course, '[a] . . . judge has as much obligation not to . . . [disqualify] himself when there is no reason to do so as he does to . . . [disqualify] himself when the converse is true.'" *United States v. Kincheloe*, 14 M.J. 40, 50 n.14 (C.M.A. 1982) (alterations in original) (citations omitted).

"[N]ot every judicial disqualification error requires reversal . . . ." *United States v. McIlwain*, 66 M.J. 312, 315 (C.A.A.F. 2008) (citation omitted). Appellate courts consider three factors to determine whether a disqualification error warrants a remedy: (1) the risk of injustice to the parties; (2) the risk that denial of relief will produce injustice in other cases; and (3) the risk of undermining public confidence in the judicial process. *Id.* (citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988)) (additional citations omitted).

### 3. Analysis

We conclude Judge Rosenow did not abuse his discretion when he declined to recuse himself from the case. He applied the correct legal standards to this determination, and his conclusion that a reasonable person with knowledge of all the circumstances would not reasonably question his impartiality was not "arbitrary, fanciful, clearly unreasonable or clearly erroneous," either at the time or in hindsight. *Sullivan*, 74 M.J. at 453 (quoting *United States v. Brown*, 72 M.J. 359, 362 (C.A.A.F. 2013)) (internal quotation marks omitted). We reach this conclusion for the following reasons.

First, we recognize the strong presumption that a military judge is impartial. *Quintanilla*, 56 M.J. at 44.

Second, Judge Rosenow specifically stated he had no bias or prejudice with respect to either party or counsel for either side. *See Sullivan*, 74 M.J. at 448 (citing *Wright*, 52 M.J. at 141).

Third, personal relationships and prior professional relationships between the military judge and counsel are not necessarily disqualifying. *Id.* (quoting *United States v. Norfleet*, 53 M.J. 262, 270 (C.A.A.F. 2000); *Wright*, 52 M.J. at 141). Although the record indicates Judge Rosenow and Maj BJ had been friends as well as colleagues, once Judge Rosenow was appointed to the bench their on-duty contact was appropriately curtailed and their social contact was not particularly extensive or intense. Maj BJ's girlfriend's presence at the birth of Judge Rosenow's children was an extraordinary circumstance and not typical of the nature of their relationship at that point.

Fourth, there is no evidence Judge Rosenow had any personal contact with Maj BJ during or close in time to Appellant's trial. *Cf. United States v. Butcher*, 56 M.J. 87, 88–90, 92 (C.A.A.F. 2001) (assuming without deciding military judge should have recused himself due to off-duty social contact with trial counsel during trial).

Fifth, Appellant chose to be tried by the military judge alone, knowing that military judge would be Judge Rosenow. Although a request for trial by the military judge alone does not necessarily waive a challenge to the military judge, *see United States v. Cornett*, 47 M.J. 128, 131 (C.A.A.F. 1997), it is a factor that may be weighed in considering how an informed member of the public might perceive Appellant's own belief in the military judge's impartiality. *See United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000).

Sixth, other than the motion to recuse itself, a claim of legal and factual insufficiency, and one non-meritorious issue personally raised by Appellant, Appellant fails to identify any alleged abuse of discretion by Judge Rosenow over the course of the trial that materially prejudiced his substantial rights, or any other manifestation of partiality toward the Government. We further note

Judge Rosenow acquitted Appellant of one of the two specifications charged against him.

Seventh, we agree with Judge Rosenow that it is the military judge and not the parties who must decide whether the military judge is disqualified. The mere fact that the Government effectively joined the defense motion to recuse might have been a relevant consideration, but it was not and could not be dispositive. To hold otherwise would effectively give the parties collective control over whether a military judge could hear a particular case.

We find Appellant's case substantially unlike those in which the CAAF has found, or assumed without deciding, that the presiding judge was disqualified. *See, e.g., United States v. Martinez*, 70 M.J. 154, 158–59 (C.A.A.F. 2011) (presiding judge's judicial supervisor privately conferred with trial counsel before accompanying judge into chambers); *McIlwain*, 66 M.J. at 314 (military judge declined to recuse herself after "announcing that her participation 'would suggest to an impartial person looking in that I can't be impartial in this case'"); *Butcher*, 56 M.J. at 88–90, 92 (off-duty social contact between military judge and trial counsel during trial).

For the foregoing reasons, we conclude Judge Rosenow did not abuse his discretion by denying the motion to recuse. Additionally, if we assume *arguendo* that Judge Rosenow was disqualified and apply the three *Liljeberg* factors, we would not find reversal of Appellant's conviction to be necessary to maintain public confidence in the judicial process. *See McIlwain*, 66 M.J. at 315 (citing *Liljeberg*, 486 U.S. at 864). First, we find the risk of injustice to the parties to be minimal. As we noted above, Appellant has asserted very little in the way of manifestations of unfair prejudice on Judge Rosenow's part over the course of the trial. To the contrary, Appellant elected to be tried by military judge alone; Judge Rosenow found him not guilty of one of the two specifications; and as described below there was very strong evidence supporting his conviction of the other specification.

Second, we find the risk of injustice in other cases to be low. "Each such case must be assessed on its own merits," and in this case the appearance concern was specific to Judge Rosenow's relationship with Maj BJ. That specific concern would arise again only in the event that Judge Rosenow and Maj BJ encountered each other once again as presiding judge and counsel in a court-martial.

Third, we find the risk of undermining public confidence is also low. Appellant's case does not involve unethical judicial behavior, conduct bearing on the merits of the proceedings, or other factors that would undermine the basic fairness of the judicial process. *See Butcher*, 56 M.J. at 93. We conclude a member

of the public, fully informed of the circumstances, would believe Appellant had a fair trial whose result was reliable.

## C. Legal and Factual Sufficiency

### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citation omitted); *see also Humpherys*, 57 M.J. at 94 (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

As charged in Appellant's case, the elements of the specification of the charge of sexual assault in violation of Article 120, UCMJ, included the following: (1) that in the continental United States between on or about 1 September 2012 and on or about 1 March 2016, on divers occasions Appellant committed a sexual act on Ms. AC by penetrating her vulva with his finger; (2) that Ms. AC was asleep; (3) that Appellant knew or reasonably should have known Ms. AC was asleep; and (4) that Appellant did so with the intent to gratify his sexual desire. *See Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 45.b.(3)(e).

### 2. Analysis

The Government introduced ample evidence to support Appellant's conviction. Ms. AC testified that on numerous occasions during the charged time frame she awoke to find Appellant had penetrated her vagina with his finger.

14

Although she provided only a broad estimate as to how frequently this occurred, she specifically identified three occasions that stood out to her—the first time in September 2012, the incident at her parents' house around Thanksgiving 2015 that made her decide to leave the marriage, and the last time in January 2016. She clearly testified that she did not consent to Appellant penetrating her vagina while she was asleep, and although her immediate responses varied she would always confront Appellant about these incidents the following day. Nevertheless, Appellant persisted throughout the marriage. Ms. AC's testimony supports a finding that on divers occasions Appellant not only penetrated her vagina with his finger while she was asleep, but that he knew or should have known she was asleep and did it for his own sexual gratification.

Ms. AC's testimony was powerfully reinforced by the introduction of a telephone call Ms. AC recorded in May 2016 without Appellant's knowledge. When Ms. AC confronted Appellant for repeatedly digitally penetrating her vagina while she was asleep, despite her repeated complaints, Appellant did not refute the claim but said he was "terribly sorry" and promised her "it will never happen again." Appellant later stated "[w]hen we weren't having sex, I tried to initiate more while you were sleeping." He then conceded, "I was wrong every night I tried to, that I fingered you in your sleep. Okay? It was wrong . . . I just wanted to have sex with you. Okay? I'm sorry." Ms. AC's testimony was further supported by the testimony of the two friends in whom she confided about Appellant's actions prior to seeking a divorce, as well as the testimony of Ms. AC's mother that Appellant told her there had been approximately ten nonconsensual incidents.

On appeal, Appellant attacks Ms. AC's testimony on multiple fronts. He argues her descriptions lack specificity and are implausible. He contends Ms. AC's divorce and child custody dispute with Appellant provide a powerful motive to fabricate. Further, Appellant notes that by her own admission Appellant and a neighbor caught her kissing another Air Force member in February 2016; he suggests the allegation of sexual assault helped her justify her infidelity and divorce to her parents, with whom she was obliged to live after the divorce. He also contends Ms. AC did not make an unrestricted report of sexual assault until the divorce became contentious, suggesting she viewed the allegations as a tool in that contest. Finally, four defense witnesses testified to their opinions that Ms. AC had a poor character for truthfulness.[11]

---

[11] Two prosecution witnesses testified to their opinions that Ms. AC had a good character for truthfulness.

If the Government's only evidence were Ms. AC's own testimony, Appellant's arguments might have more force. However, his own words on the recorded call are very damaging. Ms. AC's testimony coupled with Appellant's admissions on the call, as well as the other supporting evidence, provide compelling evidence of Appellant's guilt.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," the evidence was legally sufficient to support Appellant's conviction of the Charge and Specification beyond a reasonable doubt. *Barner*, 56 M.J. at 134 (citations omitted). Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses as the military judge did, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction of the Charge and Specification are therefore both legally and factually sufficient.

## D. Ineffective Assistance of Counsel[12]

### 1. Law

The Sixth Amendment[13] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). We "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001)). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *Mazza*, 67 M.J. at 474).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?

---

[12] Although raised as separate assignments of error, we review Appellant's claims of ineffective assistance of counsel raised through his appellate counsel together with the claims he asserts personally pursuant to *Grostefon*, 12 M.J. at 431.

[13] U.S. CONST. amend. VI.

    3. If defense counsel was ineffective, is there "a reasonable prob-
ability that, absent the errors," there would have been a differ-
ent result?

*Gooch*, 69 M.J. at 362 (alteration in original) (quoting *United States v. Polk*, 32
M.J. 150, 153 (C.M.A. 1991)). The burden is on the appellant to demonstrate
both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420,
424 (C.A.A.F. 2012) (citation omitted).

### 2. Analysis

Appellant contends his trial defense counsel failed to provide him effective
assistance in two respects: by advising Appellant to elect trial by military judge
alone, and by failing to pursue discovery and call witnesses related to Ms. AC's
mental health. We consider each contention in turn.

#### a. Forum Selection

In a sworn declaration in support of his appeal, Appellant describes the
advice his trial defense counsel provided with respect to forum selection. They
advised that the advantage of court members was that a two-thirds vote would
be required to convict. However, his counsel opined that members were more
likely than the military judge to be swayed by emotion, and that Ms. AC
"looked like a victim" and was "a single mom," which "wouldn't be in [Appel-
lant's] favor with the jury." On the other hand, notwithstanding the Defense's
motion to recuse the military judge, trial defense counsel advised Appellant
that Judge Rosenow was "a fair judge" who would give him "a fair trial" based
on the law alone. Moreover, they thought Judge Rosenow would try to be "even
more fair and impartial" after denying the recusal motion. According to Appel-
lant, trial defense counsel advised him the decision was his, but "if it was them
they would go judge alone."

At the Government's request, this court ordered and received from Appel-
lant's trial defense counsel declarations responsive to Appellant's claims of in-
effective assistance. The two declarations are generally consistent. Trial de-
fense counsel state they advised Appellant on the advantages and disad-
vantages of trial by members and trial by military judge alone. They did not
believe, and did not advise Appellant, that Judge Rosenow was actually un-
fairly biased; the motion to recuse had been based only upon the appearance
created by Judge Rosenow's friendship with Maj BJ. They advised Appellant
that the decision was his to make. The most significant point on which trial
defense counsel disagree with Appellant is that they both deny specifically rec-
ommending that Appellant choose trial by military judge alone.

Because there is a factual dispute between Appellant and trial defense
counsel, we have considered whether a post-trial evidentiary hearing is re-
quired to resolve the conflict. *See United States v. Ginn*, 47 M.J. 236, 248

(C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We are convinced such a hearing is not required in this case because even if we accept Appellant's version of events as true, he would not be entitled to relief. *See Ginn*, 47 M.J. at 248.

The motion for recusal was based on the appearance created by Judge Rosenow's friendship with Maj BJ, not on an allegation or belief that the military judge would be actually biased in favor of the Government. Moreover, the record discloses no evidence the military judge was in fact biased either in favor of the Government or against the Defense. Indeed, the military judge found Appellant not guilty of one of the two specifications, and as we have described above the Government presented compelling evidence of Appellant's guilt of the specification for which he was convicted. Accordingly, we conclude trial defense counsel's advice with regard to forum was reasonable and not measurably below the standard of performance, and there is no reasonable prospect Appellant would have received a more favorable result had he elected trial by members. *See Gooch*, 69 M.J. at 362.

### b. Discovery Related to Ms. AC's Mental Health

On cross-examination, Ms. AC described one occasion when she was at home with the children and became sick with a high fever, which caused her to experience "hallucinations." She testified this was the only time she ever experienced hallucinations, and she did not recall if she visited a hospital as a result of this illness.

On appeal, Appellant personally asserts[14] his trial defense counsel were ineffective for failing to seek discovery related to Ms. AC's hallucinations, specifically by requesting Ms. AC's mental health and Family Advocacy records. He asserts these records would have disclosed information impeaching Ms. AC's ability to accurately perceive and recall events. In response, trial defense counsel explain that they did not need such information for their theory of the case and trial strategy, that they feared uncovering information that actually supported Ms. AC's version of events, and that Ms. AC's one experience with hallucinations brought on by a fever "had nothing to do with mental health."

We find trial defense counsel's explanations more than reasonable, and we perceive no basis to conclude pursuing such records offered any prospect of a substantially more favorable result for Appellant. This assertion of ineffective assistance of counsel is without merit.

### E. Trial Counsel Misconduct

#### 1. Law

---

[14] *See Grostefon*, 12 M.J. at 431.

Improper argument is a question of law that this court reviews de novo. *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011) (citation omitted). When preserved by an objection, an allegation of improper argument is reviewed to determine whether the military judge's ruling constitutes an abuse of discretion. *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citing *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014); Article 59(a), UCMJ, 10 U.S.C. § 859(a)). If a proper objection is not made we test for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (citation omitted). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted). The burden of proof under a plain error review is on the appellant. *See Sewell*, 76 M.J. at 18 (citation omitted).

"Improper argument is one facet of prosecutorial misconduct." *Id.* (citation omitted). "Prosecutorial misconduct occurs when trial counsel 'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *Hornback*, 73 M.J. at 159 (alteration in original) (quoting *Fletcher*, 62 M.J. at 179). Such conduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, [for example], a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *Id.* at 160 (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)).

Improper argument does not automatically require a new trial or the dismissal of the charges against the accused. *Fletcher*, 62 M.J. at 178. Relief will be granted only if the trial counsel's misconduct "actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." *Id.* (quoting *Meek*, 44 M.J. at 5). "A prosecutorial comment must be examined in light of its context within the entire court-martial." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citation omitted). "[P]rosecutorial misconduct by a trial counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident" that the appellant was convicted and sentenced on the basis of the evidence alone. *Fletcher*, 62 M.J. at 184; *see Halpin*, 71 M.J. at 479 (regarding sentencing arguments). In assessing prejudice from improper argument, we balance three factors: (1) the severity of the misconduct; (2) the measures, if any, adopted to cure the misconduct; and (3) the weight of the evidence supporting the conviction or sentence. *See Halpin*, 71 M.J. at 480; *Fletcher*, 62 M.J. at 184.

### 2. Analysis

Appellant alleges several instances of prosecutorial misconduct. First, he alleges that during argument on findings, Maj BJ, the senior trial counsel, misused evidence of uncharged misconduct that had been admitted for a limited

purpose under Mil. R. Evid. 404(b). Second, he contends Maj BJ improperly expressed opinions about the truthfulness of the victim and the untruthfulness of a defense witness. Third, Appellant asserts assistant trial counsel's sentencing argument improperly commented on his right to trial. Finally, Appellant contends the Government improperly withheld unredacted copies of the record of trial from Appellant's civilian and detailed military defense counsel. We address each contention in turn.

### a. Findings Argument: Mil. R. Evid. 404(b) Evidence

As described above, at trial the Government introduced a recording of a phone conversation between Ms. AC and Appellant that she had recorded without his knowledge. In addition to the charged incidents of digital penetration, Ms. AC also referred to uncharged alleged nonconsensual sexual acts by Appellant during the marriage. Over defense objection, the military judge ruled the recording was admissible in its entirety pursuant to Mil. R. Evid. 404(b).[15] The military judge explained the information regarding uncharged misconduct was "only being admitted for a single purpose: to assist the finder of fact in determining the weight or significance, if any, [Appellant's] apparently self-incriminating statements regarding the charged offenses deserve under all the circumstances."

Appellant cites two comments Maj BJ made during findings argument that he asserts misused this evidence of uncharged misconduct. In the first instance, Maj BJ argued: "But when you look at the actual allegations in this case, when you take the emotions out of it . . . when you look at all the evidence, you have solid credible evidence that the facts in this case happened. That they occurred over the duration of their marriage." In the second instance, during his rebuttal argument Maj BJ responded to the defense argument that Ms. AC's testimony lacked specificity: "What details do you want? Like when it's over and over and over again from September 2012 till January 2016; over and over and over again." The Defense did not object at trial, but on appeal Appellant contends these arguments exceeded the military judge's ruling.

---

[15] Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is generally not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion. However, such evidence may be admissible for another purpose, including, *inter alia*, proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Mil. R. Evid. 404(b)(2). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989).

We are not persuaded. These statements were evidently references to the charged offenses of digital penetration while Ms. AC was asleep. Maj BJ's reference to September 2012 and January 2016 matches Ms. AC's testimony regarding the first and last incidents of the digital vaginal penetration for which Appellant was convicted. Moreover, Ms. AC testified these incidents occurred numerous times during the marriage, not only on the three occurrences she described in more detail. Trial counsel is entitled "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citation omitted). We discern no error, plain or otherwise, in these statements.

### b. Findings Argument: Improper Vouching

Ms. JM was one of several witnesses the Defense called during findings proceedings. Ms. JM testified, *inter alia*, that Ms. AC sought to have Ms. JM give a false statement that Ms. JM had seen Appellant strike Ms. AC. When asked for her opinion regarding Ms. AC's character for truthfulness, Ms. JM opined that Ms. AC was a "pathological liar."

Maj BJ opened his rebuttal argument on findings with the following statement: "First of all, Ms. [JM]'s a flat liar." He then described perceived weaknesses in Ms. JM's credibility, including her courtroom demeanor, inconsistencies between her testimony and other evidence, and her relationship with Appellant. Later in the argument, Maj BJ stated Ms. AC "was being honest about what happened to her," in the context of Ms. AC not being able to specifically remember or describe every alleged incident of digital penetration. Trial defense counsel did not object to either of these statements.

"Improper interjection of the prosecutor's views can also include 'substantive commentary on the truth or falsity of testimony or evidence.'" *Fletcher*, 62 M.J. at 180 (quoting *United States v. Washington*, 263 F. Supp. 2d 413, 431 (D. Conn. 2003)). Trial counsel are prohibited from placing "the prestige of the government behind a witness through personal assurances of the witness's veracity.'" *Id.* (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)). Arguably, Maj BJ's comments regarding the credibility of Ms. JM and Ms. AC were based on the evidence and observations from trial, and not on the prosecutor's personal assurances. However, in *United States v. Voorhees*, the CAAF recently found statements by the trial counsel such as "That was his perception. That was the truth," and "[the witness is] not lying. It's the truth. It's what happened," to be individual examples of "clear and obvious error." 79 M.J. 5, 11–12 (C.A.A.F. 2019). Accordingly, without deciding, we assume *arguendo* Maj BJ's statements regarding credibility met the threshold for "plain or obvious" error. *See Fletcher*, 62 M.J. at 179 (citation omitted).

Nevertheless, improper argument does not necessarily warrant relief, and under the circumstances of this case we find any error did not prejudice Appellant. *See id.* at 184. We reach this conclusion for several reasons. First, these two brief comments were not recurring themes in the Government's argument. Second, Maj BJ presented these comments as inferences to be drawn from the evidence and observations from trial, not insinuations that the finder of fact should rely on the Prosecution's prestige or access to additional information. Third, as described above with regard to the legal and factual sufficiency of the evidence, the Government's case was quite strong, bolstered by Appellant's own very damaging statements on the recorded phone call. Finally, and most significantly, Appellant was tried by a military judge alone, and "the military judge is presumed to know what portions of argument are impermissible, absent clear evidence to the contrary." *United States v. Hamilton*, 78 M.J. 335, 343 (C.A.A.F. 2019) (citations omitted). Accordingly, we find no material prejudice to Appellant's substantial rights and conclude he has failed to demonstrate plain error that warrants relief. *See Fletcher*, 62 M.J. at 179.

### c. Sentencing Argument

During sentencing proceedings, Ms. RC, the victim's mother, testified regarding Ms. AC's emotional state and activities after she moved in with her parents in August 2016. Later, Ms. AC presented an unsworn statement through her counsel. Therein she stated, *inter alia*, that she "had to go back to school and establish a career path while subjecting [her] life to the court system," and she had "been under a microscope for over two years . . . ." Assistant trial counsel's sentencing argument included the following:

> And you heard from [Ms. RC], again, that it's taken almost [two] years now for [Ms. AC], the victim, to start coming back to life, to start turning the corner, to start being recalled to life, and to start moving forward; [two] years after the last time he penetrated her in her sleep.

Trial defense counsel did not object to this argument.

Appellant contends assistant trial counsel's reference to "two years" was an improper reference to Ms. AC's statement regarding being under a microscope for two years, an allegedly inappropriate comment on Appellant's right to trial.[16] We disagree. Assistant trial counsel's argument was an appropriate reference to Ms. RC's testimony about her observations of Ms. AC, as well as other

---

[16] *Cf. United States v. Stephens*, 67 M.J. 233, 235–36 (C.A.A.F. 2009) (distinguishing cases in which the trial counsel "explicitly commented on the fact that the appellant's invocation of his constitutional right to trial forced the victim to endure the rigors of cross-examination and relive the experience of being attacked") (citations omitted).

evidence regarding the offense of which Appellant was convicted. We find no error, plain or otherwise.

### d. Post-Trial

After Appellant's trial, the military judge signed an order sealing certain portions of the record. He restricted access to the sealed portions to "the government, defense and Special Victims' Counsel (SVC) for [Ms. AC]," subject to certain restrictions. After trial, Appellant was represented by a civilian defense counsel and newly-detailed military counsel, neither of whom had participated in the trial, for purposes of preparing matters for the convening authority and for appeal. The Government declined to provide these new counsel with copies of the sealed portions of record until the military judge explicitly authorized their access at a post-trial hearing ordered by the convening authority and conducted on 25 July 2018.

Appellant contends the convening authority and trial counsel both "unlawfully impeded" the Defense for months. We are not persuaded Appellant has demonstrated the Government violated a "legal norm or standard." *See Hornback*, 73 M.J. at 160 (citation omitted). Arguably, the Government applied an unnecessarily grudging and nitpicking interpretation to a somewhat ambiguous situation. However, we note at the hearing the military judge found it "obvious" that the Government would be "concern[ed], consistent with [its] responsibilities to follow th[e] court's order, in allowing hiring of counsel to go uncommented on or unseen by the military judge who gave the order." In any event, this episode plainly had no effect on the findings or sentence of the court, and Appellant cannot demonstrate prejudice. We address below the distinct question of whether Appellant is entitled to relief for facially unreasonable post-trial delay.

## F. Unlawful Punishment

### 1. Law

Whether this court has jurisdiction over an issue asserted on appeal is a question of law we review de novo. *United States v. Buford*, 77 M.J. 562, 564 (A.F. Ct. Crim. App. 2017) (citing *Randolph v. HV*, 76 M.J. 27, 29 (C.A.A.F. 2017)) (additional citation omitted). "The burden to establish jurisdiction rests with the party invoking the court's jurisdiction." *United States v. LaBella*, 75 M.J. 52, 53 (C.A.A.F. 2015) (citation omitted). Similarly, "[t]he scope and meaning of Article 66(c), UCMJ, which is the source of this court's authority, is a matter of statutory interpretation, which, as a question of law, is reviewed de novo." *Buford*, 77 M.J. at 564 (citing *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015), *cert. denied*, 136 S. Ct. 915 (2016)).

Article 66(c), UCMJ, 10 U.S.C. § 866(c), provides in part:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.

Although this court "may review the actions of military officials to ensure the severity of the monetary components of a sentence are not unlawfully increased," our review "does not extend . . . to all finance or personnel matters that may have some link to a court-martial sentence." *Buford*, 77 M.J. at 565.

### 2. Analysis

Appellant's sentence included, *inter alia*, a reduction to the grade of E-1, and pursuant to Article 58b(a), UCMJ, 10 U.S.C. § 858b(a), his sentence to a dishonorable discharge resulted in automatic forfeiture of his pay and allowances during his term of confinement. However, the convening authority deferred the reduction in grade and automatic forfeitures until action, and thereafter waived the forfeitures for the benefit of Appellant's dependent children for a period of six months pursuant to Articles 57(b) and 58b(d), UCMJ, 10 U.S.C. §§ 857(b), 858b(d). On appeal, Appellant asserts that the Government has persistently failed to pay him appropriately in accordance with the deferment and waiver, despite extensive efforts to correct the matter. As a result, Appellant contends he was punished in excess of his approved sentence, and proposes that this court should set aside the findings and sentence. We decline.

In some ways, Appellant's claim is similar to the issue raised in *Buford*. *See* 77 M.J. at 563–64. In that case, the appellant contended that he had been incorrectly denied pay during a period of accrued leave due to errors in the Air Force's personnel and finance systems following his court-martial. *Id*. Therefore his claim, like Appellant's, was essentially that he had not been paid appropriately in the aftermath of his court-martial, which he characterized as an improper "punishment." *Id*. at 565–66. However, this court found it lacked jurisdiction to review the asserted pay errors because they did "not concern the legality or appropriateness of an approved court-martial sentence," and were "plainly a collateral administrative matter." *Id*. at 565.

We recognize that Appellant's pay issue may be less collateral to the approved sentence than was the case in *Buford*, where the appellant's sentence included only a bad-conduct discharge and reduction to E-1, but involved no confinement or adjudged or mandatory forfeiture of pay. *Id*. Appellant's claim is arguably more closely related to the execution of his sentence to reduction, confinement, and dishonorable discharge. Nevertheless, Appellant has failed

to meet his burden to persuade us that his claim falls within our limited jurisdiction under Article 66, UCMJ. *Id.* at 564 (citing *United States v. Wuterich*, 67 M.J. 63, 70 (C.A.A.F 2008)) ("Military trial and appellate courts, like all federal courts, are courts of limited jurisdiction."). On the record before us, we cannot say whether the amount and timing of Appellant's pay was correct or not, or, if not, whether he and his dependents will ultimately be made whole. We are not persuaded that policing the vagaries of the military pay system falls within our limited jurisdiction over the findings and sentence of a court-martial. *Cf. United States v. Jessie*, ___ M.J. ___, No. 19-0192, 2020 CAAF LEXIS 188, at \*22 (C.A.A.F. 6 Apr. 2020) (citation omitted) ("[T]he text of Article 66(c), UCMJ, does not permit the [Courts of Criminal Appeals] to consider matters that are outside the entire record."); *United States v. Dodge*, 60 M.J. 873, 878 (A.F. Ct. Crim. App. 2005), *aff'd*, 61 M.J. 288 (C.A.A.F. 2005) (mem.) (noting an appellant may pursue a claim for back pay "in the court Congress has vested with jurisdiction over the matter, the United States Court of Federal Claims").

### G. Post-Trial Delay

"We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citing *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004); *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003)).

Appellant was sentenced on 15 March 2018. However, the convening authority did not take action until 10 October 2018. This 209-day period exceeded by 89 days the 120-day threshold for a facially unreasonable delay established in *Moreno*. *See id.* at 142. Accordingly, we have considered the four factors the CAAF identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)). However, where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

It appears the primary reason for the delay was the Government's unwillingness to provide Appellant's new counsel access to the sealed portions of the record until the military judge ruled on the matter, as described above. Appellant complains the convening authority and trial counsel acted unlawfully; however, he has not asserted any cognizable prejudice from the delay, and we

perceive none.[17] Moreover, only 77 days elapsed from the post-trial hearing on 25 July 2018 until convening authority action, during which time the transcription of the hearing, final assembly of the record, staff judge advocate recommendation, clemency submission, and other stages of the post-trial process were completed. On the whole, despite the Government's reluctance to accommodate defense counsel's access to sealed material without judicial oversight, we do not find the delay so egregious as to adversely affect the perceived fairness and integrity of the military justice system. *See Toohey*, 63 M.J. at 362.

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

---

[17] In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an Appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted). Where, as in this case, the appellant does not prevail on the substantive grounds of his appeal, there is no oppressive incarceration. *Id.* at 139. Similarly, where Appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *Id.* at 140. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* We discern no such particularized anxiety in Appellant's case.

Accordingly, the findings and sentence are **AFFIRMED**.[18]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[18] We note an error in the promulgating order, which misidentifies the Charge as a violation of "Article 120b" vice "Article 120." We direct this error be corrected in a new court-martial order.